CAIN v. CAIN.

1. ACCOUNTING—COTENANTS—RENTS AND PROFITS—EVIDENCE.— Where the occupying tenant neglects to keep an account of the rents and profits actually received from the common property, that fact may be shown by proof of rental value.

2. IBID.—IBID.—IBID.—In an accounting between cotenants for rents and profits received by occupying tenant, he may set off against the rents received the increased rental value of the premises by reason of improvements put thereon by him.

3. IBID.—RENTS AND PROFITS—PARENT AND CHILD—MINORS.—Under the facts in this case, the father, as occupying tenant of the common property, should not be required to account for rents and profits used in maintaining on the property his minor children, who are his cotenants.

4. IBID.—COTENANTS—RENTS AND PROFITS.—An occupying tenant using more than his share of the common property is accountable to his cotenants for the net profits arising from such use.

5. ADVANCEMENTS.—A VESTED REMAINDER in real estate is the subject of advancement.

6. AN ESTATE IN REMAINDER after a life estate may, under ordinary circumstances, be valued at one-half of the fee simple value of the whole.

7. ADVANCEMENTS.—The fact that a life tenant furnished a portion of the purchase money of a tract of land to be conveyed to her, with remainder to her children, cannot affect the question of advancement to the children of the remainder of the value of the land.

Before GARY, J., Florence, April, 1898. Modified.

Action for partition and accounting, by Charlton W. Cain and Sallie J. Cain, by their *guardian ad litem, v.* Hattie C. Cain, administratrix of T. C. Cain, Furman,.William, Ruth, and Elma Cain, and W. E. Lynch. From Circuit decree, the plaintiffs appeal.

*Messrs. Wilcox & Wilcox,* for appellants, cite: *Testimony as to rental value proper here:* McM. Eq., 16; Id., 75. *Occupying tenant must account for rental value:* 52 Am. St. R., 911; 14 S. C., 292; 2 Strob. Eq., 160; Rich. Eq. Cases, 291; Rice Ch., 238; 2 Hill Ch., 370.

*Messrs. Woods & Shipp* and *J. P. Neill,* contra. (Oral argument.)

Oct. 18, 1898. The opinion of the Court was delivered by

MR. JUSTICE JONES. Plaintiffs bring this action for partition of land, an accounting for rents and profits, and to have certain of the defendants to account for advancements. Sarah E. Cain died intestate in June, 1883, seized of one of the tracts of land described in the complaint, leaving as her heirs at law, her husband, T. C. Cain, and the plaintiffs, Charlton and Sallie Cain, her children. T. C. Cain and the plaintiffs, who are still minors, lived on and received their support from the land until February, 1888, when T. C. Cain married the defendant, Hattie C. Cain. The family, including the plaintiffs, continued to reside on the place and to derive their support therefrom until the death of T. C. Cain, in 1896. Hattie C. Cain became administratrix of T. C. Cain. Four of the defendants are minor children of T. C. Cain by his second wife, Hattie. A few days before his death, T. C. Cain conveyed a tract of land said to be worth $1,600 to his wife, Hattie C. Cain, for life, and at her death to her said four children. Plaintiffs now seek an accounting by the administratrix of T. C. Cain for rents and profits of the tract inherited from Sarah E. Cain, from the death of Sarah E. Cain in 1883 to the death of T. C. Cain in 1896, and an accounting by the four children of Hattie C. Cain for the value of their estate in remainder in the tract conveyed to them by T. C. Cain just before his death.

The special referee to whom the case was referred, held the administratrix accountable for two-thirds of the rents

and profits received by T. C. Cain for twelve years, at $90 per year, that sum, according to the testimony, being about the rental value of the premises. In reaching this result, the referee admitted and considered the testimony as to the rental value of the land. The Circuit Court held that the referee erred in this, and that he should have held the administratrix accountable for only the value of the rents and profits actually received. We think the Circuit Court misunderstood the ruling of the referee in this regard, as the referee's report clearly shows that he held the administratrix of the occupying tenant accountable only for rents and profits received. The evidence as to the rental value of the premises occupied and cultivated, was admitted and considered merely as tending to establish the value of the rents and profits received, in the absence of any definite showing by the administratrix as to the actual receipts. Under such circumstances, the evidence was admissible. If the occupying tenant wishes to limit his accountability to rents and profits actually received, it is his privilege to show what he has received; but if he is unwilling or unable to make such showing, it is competent to show by speculative testimony what he has probably received. Under ordinary conditions, it is probable that a fair rental value of premises will closely approximate the value of rents received in case of a lease to third persons, or the value of the net profits received in case the occupying tenant cultivates the land himself and takes and appropriates the products thereof.

We agree, however, with the Circuit Court in holding that the referee erred in charging the occupying tenant with $1,080, as the amount of rents and profits received. It is true, this sum represents the rental value of the premises for twelve years, as estimated by several witnesses, but it also appeared in evidence that this rental value was due in part, at least, to the fact that T. C. Cain, the occupying tenant, had made improvements on the common property, clearing some eighteen acres, building barns,

&c.   At an early period in this State the rule was stated to be that the occupying tenant was liable for the rents and profits received of so much of the premises as was capable of producing rent at the time he took possession, but was not liable for what was rendered capable by his labor, so that he was not charged with rents and profits received from land cleared and put in cultivation during his occupancy. *Thompson* v. *Bostick*, 1 McM. Eq., 75; *Hancock* v. *Day*, *Id.*, 69; *Holt* v. *Robertson*, *Id.*, 475; *Valentine* v. *Johnson*, 1 Hill Ch., 49.   This was upon the theory that, as the occupying tenant could not as matter of right charge for improvements made without the consent of his cotenants, it would be inequitable to charge him with rents and profits resulting therefrom.   But the rule is now established in this State that in an equitable accounting for rents and profits, the occupying tenant may be allowed as a set-off against rents and profits received, not the cost of the improvements made by him, but the increased value of the premises resulting from such improvements, provided the circumstances are such as to render it an obvious hardship to deprive him of it; and provided further, that the allowance for such improvements may be made consistently with the equity of the cotenant. *Johnson* v. *Harrelson*, 18 S. C., 604; *Buch* v. *Martin*, 21 S. C., 592; *Johnson* v. *Pelot*, 24 S. C., 264.   In such equitable accounting, "the rents and profits shall be regarded as paid and discharged *pro tanto* by the increased value which may have been imparted to the premises by the improvements." *Sutton* v. *Sutton*, 26 S. C., 33; quoted with approval in *Tribble* v. *Poore*, 28 S. C., 565.   While the testimony does not show specifically the value of the improvements, there was general testimony by Mrs. Cain to the effect that, after supporting the family, including the plaintiffs, T. C. Cain put what money he made back on the place in improvements, fertilizing, building barns, &c.   The referee erred in not ascertaining the value which the improvements imparted to the premises, and in not deducting the same from the rents and profits actually received by T. C. Cain.   In this con-

nection the referee should ascertain and report what amount of the rents and profits T. C. Cain received, took or appropriated *in excess of his share.*

The testimony shows, that while T. C. Cain cultivated the tillable land, yet the plaintiffs occupied with him the common dwelling house, and received their support from the products of the farm. The referee seemed to think that, since it is the duty of a father to support his minor children, no account should be taken of so much of the farm products as went to the support of the plaintiffs; but this case is not one involving the liability of a father to support his minor children, but is an equitable accounting for rents and profits received among cotenants; and it would be inequitable to make the father, under the circumstances of this case, account for the whole rents and profits of the farm as received by him, when the children resided with him as a family, on the common property, and received their support therefrom. The land held in common seems to have been the main if not sole reliance for the support of the family. But whatever of the rents and profits T. C. Cain received and appropriated to himself in excess of his share, to the exclusion of plaintiffs, he should account for.

By the common law, one tenant in common, in the absence of an agreement express or implied, could not require his cotenant to account for receiving more than his share of the rents or use of the common property. But, by Statute 4 and 5 Anne, chapter 16, one cotenant was allowed an accounting against his cotenant, "for receiving more than comes to his just share or proportion." The Courts of England and many of the States of this Union have held that this statute is confined to cases where rents have been received from a third person, and has no application to cases wherein the occupying tenant has cultivated the land and appropriated to himself the products. Hence authorities elsewhere are numerous to the effect that an occupying tenant is not liable to account to his cotenant

for the products of the common property which he appropriates to his own use. See 3 Leading Cases on American Law Real Property, note to *Griswald* v. *Johnson*, 93, and note to *Ward* v. *Ward*, 52 Am. St. Rep., 924. But the courts of equity in this State grant relief to cotenants beyond the Statute of Anne, or statutes of similar import. It is the settled law of South Carolina, that the occupying tenant is not only liable to account for rents of the common property received from others, in excess of his share, but in case he cultivates or uses the common property in excess of his share, and takes or appropriates the proceeds or use, he is accountable to his cotenant for the net profits arising from such use. This is the rule of accountability when the possession of the occupying tenant is not tortious; when, however, his possession is tortious, he is chargeable, not with what he actually received or took, but with what he ought to have received, viz: the rental value. *Jones* v. *Massey*, 14 S. C., 309; *Thompson* v. *Peake*, 33 S. C., 454. But to make the rule stated applicable to the present case, where the cotenants all occupy the dwelling house of the common property, and all receive their support from the proceeds of the farm, it should be shown that T. C. Cain appropriated to himself more than his share of the proceeds of the farm, and for that excess he should account. Under the authorities in this State, to *take* the net profits arising from the occupying tenant's cultivation of more than his share of the common property, is to *receive* the "rents and profits" thereof. *Jones* v. *Massey*, *supra;* *Thompson* v. *Bostick*, *supra*. But in every case where the possession of the occupying tenant is not tortious, it is essential that the occupier take or receive more than his just share of the proceeds or products of the common property, in order to render him liable to account to his cotenant, in the absence of agreement express or implied.

As to the matter of advancements. The Circuit Court ought to have ruled on this question, but did not. The referee decided against the claim for advancements. He

held that "no advancement has been shown for the purpose of this case. A future interest to the children is only shown, and which they may never actually enjoy. The life tenant has been given only a life estate. The nature of the estate conveyed and the estate descended is so different, that I know of no rule by which to determine the value of the alleged advancement. Advancements are purely statutory, and I have been furnished no authority for applying by analogy the rule for estimating dower interest. Besides, a large part of the original purchase money was furnished by the life tenant on condition of this conveyance to herself and children." We do not think the claim for advancements can be rejected on the grounds stated by the referee, and as the case must go back to the referee, the question of advancements must also be reconsidered by him. A vested remainder in real estate is clearly the subject of an advancement; for while the possession is _in futuro_, such a remainder is a present and fixed interest in the seizin and property. _Hughey_ v. _Eichelberger_, 11 S. C., 36; 1 Ency. Law, 766. In the case of _Hughey_ ·v. _Eichelberger, supra_, where the donor reserved the right to use, occupy, and enjoy the land, and even to revoke the gift, the land, on the death of the donor intestate, was held to be an advancement. In this case, there is no contingency which might defeat the estate given the children in remainder. Such an estate being the subject of advancement, is, of course, capable of valuation. The value of the estate in remainder is the difference between the value of the estate in fee and the value of the life estate. In the absence of the adoption in this State of any table of life annuities, we see no good reason why the rule, which experience has approved, of assessing the one-sixth of the fee simple value of the estate in money, in lieu of the widow's dower, or life estate in one-third, may not be adopted in estimating as an advancement the value of an estate in remainder after a life estate. If a life estate in one-third is valued at one-sixth of the fee simple value of

the whole, then a life estate in the whole, or any definite part, may be valued at one-half its fee simple value. Hence an estate in remainder after a life estate may be valued at one-half of the fee simple value of the whole. It may be, in estimating the value of the life estate, as Judge Nott said, in *Wright* v. *Jennings*, 1 Bailey, 280, in reference to assessing one-sixth of the fee simple value in lieu of dower, that "in extreme cases of youth, on the one hand, or of age and infirmity, on the other, something more or less, according to circumstances, may be allowed." It might be more scientific to have a rule based on life expectancies and tables of annuities; but, in the absence of legislation, we prefer to follow the rule above stated, which is simple, easy of application, and approximately just.

In reference to the fact that the life tenant furnished $600 of the money with which T. C. Cain originally purchased the land under an agreement that T. C. Cain would convey the land to her and her children, we would say that this ought not to control in determining whether there was any advancement at all. The consideration expressed in the deed to Hattie C. Cain and children, was $1,600, no part of which was paid by the grantees, except as the $600 originally furnished by Hattie C. Cain may be regarded as entering into that consideration. The remaining $1,000 of the original purchase money was paid by T. C. Cain; and if there was an understanding, as Mrs. Cain testifies, that the land was to be conveyed to her and the children in the manner it was done, then T. C. Cain intended to make provision for the children in the land when he bought it, and this intention he carried out in the deed executed a few days before his death. Having died intestate, if he had not conveyed this land as he did, it would have been distributable among all his heirs at law, subject at most to a resulting trust in favor of Hattie C. Cain, to the extent of the purchase money furnished by her. The testimony shows that the original purchase price of the land was $1,600, and that the land was worth that sum. If, therefore,

Hattie C. Cain furnished six-sixteenths of the purchase money on condition of a conveyance to herself and children, all the claims of equity as to the money furnished by her may be met by regarding the value of the remainder in ten-sixteenths of the land as the value of the advancement to the four children by T. C. Cain from his own estate, for which they should account. According to our statute and decisions thereon, the value of an advancement must be estimated at the time of the death of the intestate, relation being had to its condition at the time of the gift.

The judgment of the Circuit Court is modified so as to recommit the case to the referee to take the accounting and determine the question as to advancements, in accordance with the principles herein announced.