## EIGHMEY v. THAYER.

1. DEEDS—EXECUTION AND DELIVERY—EVIDENCE.

Evidence in a suit to remove a cloud from title, consisting of the record of a deed, examined, and *held* sufficient to prove that the deed was executed and delivered.

2. TENANTS IN COMMON—RENTS AND PROFITS.

Where a person, ignorant of the true state of the title to land,

but chargeable with notice of it by reason of the record of a deed, purchases from a tenant in common, he cannot escape liability to the other tenants for rents and profits on the ground that he expended them in caring for his grantor under the contract of purchase.

3. Same—Improvements.

Where a tenant in common is allowed for improvements, made under the belief that he was the sole owner of the land, he should not recover from his co-tenants more than their proportionate share of the cost, and, if the added value of the land by reason of the improvements is less than the cost, not more than their proportionate share of the added value.

4. Same.

A tenant in common who demands pay from his co-tenants for improvements must share with them the rents and profits.

Appeal from Monroe; Lockwood, J. Submitted February 4, 1904. (Docket No. 65.) Decided March 8, 1904.

Bill by James Eighmey against Herbert H. Thayer and others to remove a cloud from title. From the decree rendered, both parties appeal. Modified (defendants prevailing).

*C. A. Golden* and *George M. Landon,* for complainant.

*Willis Baldwin* and *C. C. Whitmore,* for defendants.

Hooker, J. Alanson Thayer, now dead, filed the original bill in this cause June 8, 1896, to remove an alleged cloud from his title. This cloud consisted of the record of a deed of the premises from himself to one Anna S. Thayer. Anna S. Thayer was alleged to be dead, and her children were made parties; all but one of whom, being nonresidents, were brought in by publication, but did not appear. The other, Edward A. Thayer, answered, admitting the allegations of the bill; and a decree was entered on April 21, 1897, in accordance with the prayer of the bill.

In March, 1902, the other four defendants united in a petition to vacate the decree, and for an opportunity to answer and make defense against the bill; and this petition was granted, and answers were filed. The suit was heard, and resulted in a decree establishing a fifth interest in each of four of the defendants, and the remaining fifth in one Eighmey, a grantee of the original complainant; he being admitted to prosecute the case in place of Alanson Thayer, who was dead. This fifth was the interest of Edward A. Thayer, who was held to be concluded by his admissions, and the decree first entered, and his laches. The decree also provided that Eighmey should have a lien upon each fifth interest for the sum of $106, the amounts expended by him for improvements and taxes. Both parties have appealed.

Anna S. Thayer was the wife of Alanson Thayer, and the defendants were their children. The Thayers lived upon the premises prior to Anna Thayer's death, which occurred in January, 1877, and Alanson Thayer married a second time, about eight months thereafter. This wife filed a bill for divorce on August 9, 1879, and obtained a decree, without alimony, afterwards. After this second marriage, and on December 20, 1877, the deed from Alanson Thayer to Anna S. Thayer was recorded. The record shows it to have have been dated October 10, 1871. Thayer afterwards took the deed from the register's office, and there is testimony tending to show that he left it for record; a witness named Wakefield testifying that, at a time when he was having trouble with his second wife, Thayer and he had a talk, and he told the witness that he had in his possession a deed to his first wife, that he had made at a time when he was ill, so that, in case he should die, she, and not the children, would control the property, and that he had never made any use of the deed; and the witness advised him that "it was a good time to make use of it to protect himself, and he could still hold the property after she got a bill," and Thayer said that he thought it the easiest way out of the muss, and would attend to it. Soon after, the fact of its record was published.

Alanson Thayer continued to live on the place until January 18, 1898. On that day he conveyed to the complainant, and complainant mortgaged the premises to Thayer, the condition being—

"That the said party of the first part shall and do well and truly board, lodge, care for, and support on the premises above described the said second party for and during his natural life, and furnish medical care and medicine when sick, clothe him during his life, pay the expenses of his funeral, and further pay him $25 every six months during his natural life, * * * according to contract."

Complainant had leased and was living on the farm at the time, and Thayer then resided with him, and continued to do so until Thayer's death, September 19, 1900. Complainant performed the condition of the mortgage.

Complainant, Eighmey, testified that he was ignorant of the record of this deed to Anna until a year and a half after he received his deed. Thayer's original bill was verified by him. It states that he did not execute the deed; that the grantee, Anna, had been dead several years before its date; that the alleged notary was not a notary at the time; and that Sabra T. Anthony, whose name appeared as a witness to the deed, never signed it as such. Upon the last hearing of the case, the original deed to Anna S. Thayer appears to have been produced; also the record of the same. The complainant's counsel produced the record of commissions and list of notaries kept in the county clerk's office for the period after 1865, but the last entry was on August 5, 1875. They also showed that Alanson Thayer caused the property to be assessed and insured in the name of Anna Thayer's estate for many years. Complainant also introduced the testimony of Alanson Thayer, taken upon the first hearing, April 21, 1897. It was, in substance, that he had owned and been in continuous possession of the property for 35 years, that he did not execute or deliver the deed to Anna Thayer, and that she was not alive on October 10, 1871, the date of the deed. There was no appearance by defendants; hence no cross-examination.

If we eliminate the testimony of Thayer from the case, there is still abundant evidence that the deed was made and delivered to Anna Thayer in her lifetime, and very little to the contrary. The deed is produced. It is witnessed and acknowledged, and no satisfactory proof is made that Anthony did not witness it, or that Talford was not a notary, or did not take the acknowledgment. The fact of the existence of the deed is corroborated by the failure of the second Mrs. Thayer to claim dower in the premises, which she was probably entitled to, under the law, if this deed was made after her marriage. It is reasonable to conclude that she knew of its existence and validity, and so made no effort to prove that it was fictitious. Again, Thayer's conduct at the time and after the record of the deed indicated a recognition of the conveyance. His bill and testimony contained false allegations and statements as to the death of his wife, if not the execution of the deed. The learned circuit judge, who saw these witnesses, was of the opinion that the complainant had failed to establish the invalidity or want of delivery of the deed, and we think his conclusion a correct one in those particulars. This disposes of the complainant's appeal.

In complainant's supplemental bill there is a prayer that complainant be allowed the value of his improvements upon the premises, and this was allowed, as already stated. Eighmey took possession under his lease, and paid rent to Alanson Thayer, from whom he obtained possession. Subsequently he obtained a deed, and became tenant in common with the defendants, whose tenant in common had previously been Thayer. Although ignorant of the true state of the title, Eighmey was chargeable with notice of it, and cannot escape liability to account to defendants for the rents and profits upon the ground that he expended them in caring for Alanson Thayer under his contract with him. He occupied the premises under his deed from January 18, 1898, to the present time; and the circuit judge appears to have found

the net profits, after payment of taxes, to have been $155 per annum,—a fair conclusion, in our opinion. He also finds that the increased value by reason of certain improvements made is $840, according to our interpretation of his decision, in which he allowed $530 for the excess of improvements over rents. The alleged improvements consisted of (1) a well, which cost $17, but is said to increase the value of the premises $52; (2) the building of 315 rods of fence; (3) cleaning out the brush from 383 rods of fence; (4) shingling a shed, $35; (5) cleaning out some open drains on the premises; (6) the clearing of 8.6 acres of the land.

When a co-tenant is allowed for improvements, he should not, in such a case as this, be allowed to recover more than the cost; and not that, if the added value of the land, arising from such improvements, is less than the cost. And, on the other hand, he should not be allowed more than a proportionate share of the cost of the improvements if the value added is greater than the cost, for, if his co-tenant pays a share of the cost, he is entitled to a corresponding share of the profits,— i. e., added value to the property by reason of the expenditure. Again, a co-tenant who asks pay for improvements must be willing to share the rents and profits of the land, and, from our examination of the testimony, we are convinced that they equal, if they do not exceed, any just allowance for the cost of improvements.

The decree will be modified by striking therefrom the third paragraph, and denying an allowance to either party for rents or improvements. The defendants will recover costs of both courts.

The other Justices concurred.