## 7011

## VAUGHAN v. LANGFORD.

1. WILL.—CAN RELEASE OF REVERTER, after fee conditional, be made effective by will?
2. IBID.—IBID.—Exclusion by will of certain devisees from any interest in residuary estate does not exclude such devisees from possibility of reverter under former fee conditional deed by grantor.
3. COTENANTS—RENTS—BETTERMENTS—LIMITATION OF ACTIONS.—The equitable rule in accounting for betterments and rent among cotenants is to deduct rent from value of betterments to whole land. Statute of Limitations do not apply in such accounts.
4. IBID.—IBID.—LIENS.—There is no fixed lien on common property for rents, in favor of one cotenant against another, and the Court will not provide for the payment of such rents from the common property, to the prejudice of persons holding conveyances or liens on the interest of one cotenant owing the rent. But as among the parties themselves, the Court, in decreeing partition, has the power, in doing full justice in the premises, to adjust all demands for rent and require the amount found due to be settled from the share of the proceeds of the sale of the property coming to the cotenant owing the rent.
5. DEATH.—Complete disappearance for more than twenty years is sufficient *prima facie* proof of death.

Before PURDY, J., Spartanburg, July, 1907. Affirmed.

Action by Margaret Vaughan, Nancy Laura Jones and Charlotte Rebecca Morgan against Leannie Langford, W. F. Langford *et al.* From circuit decree, defendants appeal.

*Messrs. Simpson & Bomar* and *S. M. Pilgrim*, for appellants. *Messrs. Simpson & Bomar* cite: *Devisees under the will are estopped from saying grant was not in fee: Mitchell v. Cleveland*, 76 S. C.; 26 S. C., 165. *Grantor could dispose of revertor:* 4 Kent., 498. *For rents the plaintiffs are only entitled to judgment:* 17 Ency., 697; 3d Lead. Cas. Am. Law of Real Estate, 82.

*Messrs. Haynsworth & Patterson* and *Stanyarne Wilson*, contra. *Mr. Wilson*, oral argument.

September 9, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The action is for partition. The land described in the complaint was owned by William Jones, who, on 21st August, 1868, conveyed it to his daughter, Eliza Jones, "and the lawful heirs of her body." Eliza Jones, on the 21st December, 1882, executed to E. L. Langford a deed of conveyance, containing a full warranty clause, and afterward, on 28th March, 1895, died without having had heirs of her body. The plaintiffs allege that Eliza Jones held a fee conditional in the land, and that, when she died without having had heirs of her body, there was a reverter to the heirs of William Jones, living at the time of her death. The known heirs of William Jones were the plaintiffs, a daughter, Frances, who died 31st July, 1895, unmarried and childless. William Jones had another daughter, Mary, who predeceased her father, leaving four children, Frances, John, Judith A., and William Long, who left the State about 1848. William returned to the State about twenty years ago and said his brothers and sisters had all died childless. A year or two later a report came back that he also had died childless, and nothing has been heard of him since.

The plaintiffs admit that the defendants own one-third of the land in fee by reason of the fact that Frances Jones,

one of the heirs of William Jones, living at the time of the death of Eliza, who was entitled to one-third of the reversion, had joined Eliza in the conveyance made to E. L. Langford, with a general warranty of title, thus estopping herself and her heirs from setting up claim to her interest in the land.

The plaintiffs claimed an accounting for rents and profits at the rate of $150 a year.

The defendants alleged (1) that they were the owners of the land, and that the plaintiffs had no title or interest therein; (2) that the purchase money paid by E. L. Langford to Eliza Jones had been invested in other lands, which the plaintiffs had taken as her heirs; (3) that they were protected by adverse possession; and (4) that they were entitled, in any event, to betterments to the amount of fifteen hundred dollars. The second and third defenses are not involved in the appeal.

We do not understand any question to be made that under the deed from her father Eliza Jones took a fee conditional. The defendants contend, however, that William Jones, the grantor, by his will, made after the conveyance to Eliza, devised to her the reversion as a part of his residuary estate, or, if not that, the will shows that he had previously released the reversion to her, or, at least, that he did not intend the plaintiffs should have the reverion or any other interest in his estate. It is clear from the will that the testator meant to dispose of all the property then in his possession, each item of which he mentions; but it is equally clear, from the fact that he makes mention of the several items, and saying they constituted all the property he possessed, and making no reference to the reverter, that he did not have in mind and did not intend to attempt to devise the possibility of reverter created by his deed to Eliza. The possibility of a reverter, after the termination of a fee conditional, being a mere possibility, is not an estate. It is thus described in *Blount* v. *Walker,* 31 S. C., 13, 37,

9 S. E., 804: "It is neither a present nor a future right, but a mere possibility that a right may arise upon the happening of a contingency, which is not the subject of either devise or inheritance. This is because the grant or devise of a fee conditional passes the whole estate to the tenant in fee, leaving nothing in the grantor or devisor which can be the subject of devise or inheritance; and hence it is settled that, upon the termination of such an estate, it goes to those who can bring themselves into the class of heirs of the person creating the estate at the time when the estate terminates, and not to those who were heirs at the time of the death of such person." *Adams* v. *Chaplin,* 1 Hill's Ch., 265; *Deas* v. *Horry,* 2 Hill's Ch., 244; *Pearse* v. *Killian,* McM. Eq., 231. In the case last cited the Court, through Chancellor Harper, holds that he who would be entitled to an estate, if the fee conditional should presently determine, cannot devise or convey it; yet he may release it to the tenant in fee conditional, so as to make his estate an absolute fee simple. We are inclined, however, to the opinion that such a release could not be made effective by will, for the reason that a will could have no legal effect until the death of the testator; and at the moment of death the possibility of reverter passes from the testator and beyond his control to his heir.

But it is not necessary to decide that point, because the will of William Jones shows on its face that it had no reference whatever to the possibility of reverter. Certain it is that there are no words in the will which could possibly be construed as an attempt to release the possibility of reverter to Eliza, and though there are words signifying an intention to exclude the plaintiffs from participation in other property than that devised to them, that cannot have the effect of excluding them, as heirs, from participating in any property not disposed of. *Blackman* v. *Gordon,* 8 Rich. Eq., 43.

With respect to their fourth defense the defendants claim

that the Circuit Court, in allowing them credit for betterments put upon the land by E. L. Langford, decreed that the rent of the land for the time that E. L. Langford had it should be deducted. The objections urged against this method of adjustment are that the defendants should not be charged with the debt of E. L. Langford for rents; that the rents and profits chargeable against E. L. Langford are barred by the statute of limitations; and that there is no claim made in the complaint for rents and profits for the time the land was held by E. L. Langford. None of these objections have any substantial foundation. Assuming that the defendants are entitled to receive compensation for the betterments made by E. L. Langford, they cannot claim more than Langford himself would have been entitled to had he remained in possession; and it is obvious he could not have recovered the value of the betterments put upon the land without having credited thereon against him the value of the use of the land. This is the equitable rule by which the case is governed. *Sutton* v. *Sutton,* 26 S. C., 33, 1 S. E., 19; *Tribble* v. *Poore,* 28 S. C., 565, 6 S. E., 577; *McGhee* v. *Hall,* 28 S. C., 562, 6 S. E., 566; *Cain* v. *Cain,* 53 S. C., 350, 31 S. E., 278. The statute of limitations has no application, for the reason that, in accounting between co-tenants, betterments are to be regarded paid for *pro tanto* by the rents as they accrue. There is no proof here that the rents accrued more than six years before the betterments were made, and, therefore, in no possible view is the statute of limitations available to the defendants. As to the third point, it is true the plaintiffs do not seek in the complaint to recover judgment against the defendants for the rents which accrued while E. L. Langford was in possession; but when the defendants claim the benefit of betterments made by E. L. Langford, it is manifest they cannot have more than the net amount due for betterments; that is, the difference between the value of the betterments to all the owners of the land and the value of the use of the land to him.

We do not think the circuit decree contemplates making defendants liable for the debt of E. L. Langford by charging them with any balance of rents which accrued against E. L. Langford, beyond the value of betterments. But that is not a practical matter, because, under the evidence, it is not possible that his liability for rents can exceed his betterments, which are credited to defendants.

The decree provides that any rents due by defendants, over and above the betterments credited to them, shall be paid from the defendants' share of the proceeds of the sale of the land. By their seventh exception the defendants submit this was error, contending that the plaintiffs have no right to any other means of collection of the rents than an ordinary money judgment. The point is important, and there is no express decision of it in this State. We do not think it ought to be held on principle that any lien or encumbrance arises in favor of one cotenant against the share or interest of another in the land for rents due. Such liens would be indefinite in amount, and undisclosed by public records, upon which third parties in dealing with the owners of property ordinarily have a right to rely. They would greatly injure tenants in common by impairing the market value of their shares and interests, because of the apprehension on the part of those contemplating purchasing such interests, or otherwise dealing with them, that claims for rents might be established as superior liens. There are many authorities holding that no such liens exist. *Burns* v. *Dreyfus* (Miss.), 30 Am. St., 539; *Bird* v. *Bird* (Fla.), 21 Am. Rep., 296; *Flack* v. *Gosnell* (Md.), 35 Am. St., 415; *Burch* v. *Burch,* 82 Ky., 628; *Clark* v. *Hershy,* 52 Ark., 492; 17 Am. & Eng. Enc., 697; 3 Jones on Liens, sec. 1165. In New York and Missouri the contrary is held. *Harmon* v. *Osborn,* 4 Paige, 336; *Beck* v. *Kollmeyer,* 42 Mo., 563. We think reason and the weight of authority is against holding rents, due to one cotenant by another, to

constitute an outstanding lien or encumbrance on the latter's moiety.

But the absence of a lien does not render a court of equity powerless to require cotenants to do full justice to each other with respect to all their dealings with the common property, when the rights of third parties are not involved. Accounting for waste, for betterments, and for rents among cotenants, is now recognized as an incident to the right of partition, and the universal practice of the court of equity is to adjust all these matters in the suit for partition. Value added to the land by a cotenant, in the form of betterments, will be allowed and paid to him from the proceeds of the sale made for partition. *Johnson* v. *Pelot,* 24 S. C., 265; *Buck* v. *Martin,* 21 S. C., 594; *Sutton* v. *Sutton,* 26 S. C., 40, 1 S. E., 19. On the same principle, when the rights of third parties are not involved, a cotenant ought not to be allowed to have his share of the proceeds of sale, without first accounting for waste committed by him on the common property, and the rents and profits derived by him therefrom. In *Hancock* v. *Day,* McM. Eq., 73, the power and discretion of the Court to make such provision in the order of sale is fully recognized, though it was held in that case that the defendant's share of the proceeds of the sale should not be held to await the result of further litigation as to his liability for rent, when there was no showing that the defendant was not able to respond to any claim that might be established against him. The Court says, in *Backler* v. *Farrow,* 2 Hill's Ch., 111: "The exception to the commissioner's report seems to have been sustained on the ground that damages for waste cannot be recovered in this Court, the remedy being at law. This, no doubt, is in general true; but having proper jurisdiction of the case, there is hardly any question in relation to property which this Court may not determine incidentally for the purpose of doing complete justice and preventing multiplicity of litigation."

The rule that the court of equity, in decreeing partition, should adjust and settle the equities of cotenants with respect to betterments, waste and rents from the common property while under its control is thus stated by Judge Story: "Cases of a different nature, involving equitable compensation, to which a court of law is utterly inadequate, may easily be put; such, for instance, as cases where one party has laid out large sums in improvements on the estate. For, although, under such circumstances, the money so laid out does not, in strictness, constitute a lien on the estate, yet a court of equity will not grant a partition without first directing an account and compelling the party applying for partition to make due compensation. So, when a tenant in common has been in the exclusive reception of the rents and profits, on a bill for partition and account, the latter will also be decreed. So, where one tenant in common, supposing himself to be legally entitled to the whole premises, has erected valuable buildings thereon, he will be entitled to an equitable partition of the premises, so as to give him the benefit of his improvements; or, if that cannot be done, he will be entitled to compensation for those improvements." Equity Jurisprudence, sec. 655.

We think the true rule may be thus stated: There is no fixed lien on the common property for rents, in favor of one cotenant against another, and the Court will not provide for the payment of such rents from the common property, to the prejudice of persons holding conveyances or liens on the interest of the cotenant owing the rent. But, as among the parties themselves, the Court in decreeing partition has the power, in doing full justice in the premises, to adjust all demands for rent, and require the amount found due to be settled from the share of the proceeds of the sale of the property coming to the cotenant owing the rent. This rule is just and in accord with the principle that, when all the parties and the property are before the court of equity, it will do full justice to all before releasing its hold. It is not

objectionable, as creating a secret, indefinite lien, to the prejudice of those parties dealing with the owners of the property, and, therefore, it is not opposed to the authorities above cited, holding that no such lien exists.

We do not see how there can be room for serious contention that the report of the death of all the children of Mary Long, together with their complete disappearance for more than twenty years, was not sufficient *prima facie* evidence of the death of these persons. There is no ground for the exception on that point.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.