PORTER ET AL. *v.* MOONEY ET AL.

[No. 9,433. Filed May 17, 1917.]

1. DESCENT AND DISTRIBUTION.—*Rights of Widow in Realty.—
Mortgages.—Statutes.*—Under §3014 Burns 1914, §2483 R. S.
1881, providing that, if a husband die testate or intestate leav-
ing a widow, one-third of his real estate shall descend to her in
fee simple, free from all demands of creditors, etc., and §3033
Burns 1914, §2495 R. S. 1881, providing that where a husband
shall purchase land during marriage and gives a purchase-
money mortgage thereon, the widow shall be entitled to her
third of such lands against all persons except the mortgagee,
a widow of one dying intestate and leaving heirs is entitled to
one-third of the rents and profits and equitably chargeable with

a like proportion of the taxes and expenses of legitimate improvements; and a purchase-money mortgage is primarily a charge against the undivided two-thirds of the land. p. 486.

2. PARTITION.—*Equitable Accounting.*—Where the owner of lands died intestate survived by a widow and children, in a suit for partition of the real estate among heirs instituted subsequent to the widow's death, the case may be considered as if the children and their successors in interest had owned the entire title to the lands after the decease of the intestate, as the heirs of the widow and the intestate are the same. p. 486.

3. PARTITION.—*Accounting Between Occupying Tenant and Cotenants.*—It is the general rule, subject to some exceptions by reason of equitable considerations, that a cotenant may be required to account only in case he has received rents from third persons or has held possession in hostility to his cotenants and to their exclusion. p. 487.

4. PARTITION.—*Equity.—Accounting Between Occupying Tenant and Cotenants.—Allowances.*—Where in a partition proceeding cotenants ask an equitable accounting against the occupying tenant by reason of rents and profits received by him, such tenant is entitled to an allowance based on incumbrances paid and discharged by him and advances made for proper and reasonable repairs and improvements, the right to an accounting in such a case being governed by equitable principles. p. 487.

5. PARTITION—*Equity.—Accounting Between Occupying Tenant and Cotenant.—Charges.*—Where a cotenant himself farmed the lands, he should be chargeable, in an action between cotenants for an accounting, only with the landlord's share of the rents and profits as actually realized by him, and where he leased the land to others, he should be held to account for only the rents actually received by him, making proper allowance for his interest as the owner of one share in the lands. p. 488.

6. PARTITION. — *Accounting.—Evidence.—Admissibility.—Rental Value of Lands.*—In an action by cotenants, who were heirs of an intestate for partition of real estate, in which an equitable accounting was asked against the occupying tenant, who could not accurately inform the court as to the amount of rents and profits received by him during a certain period, the court properly heard evidence of the rental value of the lands. p. 489.

7. APPEAL.—*Review.—Evidence.—Admission.*—In an action for partition between an intestate's heirs to lands in which an equitable accounting was asked against the occupying tenant, where it does not appear that evidence of the rental value of the land, based on the hypothesis that no improvements had

been added after the death of the intestate, did not enter into the decision of the court, if such evidence was erroneously admitted, it would be presumed to have been harmful. p. 489.

8. PARTITION.—*Accounting Between Occupying Tenant and Cotenants.—Use and Occupation of Realty.—Charge.*—In an action by cotenants, heirs of an intestate, for partition and sale of real estate in which an equitable accounting was asked against the occupying tenant, where such tenant received the rents and profits and with the money so received made improvements, paid the taxes and discharged a purchase-money mortgage, and other cotenants, living on the farm and receiving their maintenance therefrom, assisted in creating the fund used to pay for improvements, etc., by indirectly augmenting the profits derived from the realty, the charge against the occupying tenant, for use and occupation should be based on the actual condition of the real estate from year to year, including improvements made after the death of the intestate. pp. 490, 493.

9. TENANCY IN COMMON.—*Improvements by Occupying Tenant. —Discharge of Liens.*—The discharge of liens and the making of improvements by an occupying tenant, using the rents and profits, are under some circumstances deemed to be the joint acts of all of the tenants, and such improvements are regarded as paid *pro tanto* by the rents and profits as they accrue, even in the absence of an admission to that effect. p. 493.

10. PARTITION.—*Equitable Accounting Between Occupying Tenant and Cotenants.—Improvements.—Credit for Cost.*—Where an occupying tenant received the rents and profits from a farm after the death of his father, and other cotenants, some of whom lived on the farm and received their maintenance therefrom, indirectly increased such profits, and the occupying tenant, using the profits derived from his own services and to some extent from the labor of certain other cotenants, made improvements, which became part of the realty and thereby augmented the value of the interest owned by each of the parties, the occupying tenant should be credited, at their cost, with improvements made by him, and sums advanced to any of the parties in cash under circumstances not indicating a gift should be taken into consideration, since by the application of the rents and profits to the expense of making improvements with at least the implied consent of the parties interested, such rents and profits were in fact beneficially paid and delivered to those equitably entitled to receive them. p. 494.

From Hancock Circuit Court; *Earl Sample,* Judge.

Action by Joanna Porter and others against John Mooney and others. From the judgment rendered, the plaintiffs appeal. *Reversed.*

*Cook & Walker,* and *Koons & Koons,* for appellants.

*Arthur C. Van Duyn, Robert F. Reeves* and *Tindall & Tindall,* for appellees.

CALDWELL, J.—Appellants brought this action against appellees for the partition and sale, as indivisible, of two tracts of land in Hancock county, containing thirty and fifty-two acres respectively, of which Patrick Mooney died seized in 1886. His widow, Bridget Mooney, died in 1913. Appellants Joanna Porter, Martin and Thomas Mooney, and appellees John and Mary Mooney are their children. Appellants Cecil and Harry Kelsch are their grandchildren.

It is conceded that each child is the owner of an undivided one-sixth and each of said grandchildren of an undivided one-twelfth, in value, of the lands involved, subject to the settlement of Bridget Mooney's estate. It is conceded also that in the distribution of the proceeds arising from the sale of the lands, John Mooney, as occupying tenant, should be charged with certain rents and profits received and appropriated by him, and that he should be credited on account of sums paid by him to improve the real estate and in the discharge of liens. The parties differ radically, however, respecting the method that should be adopted and the equitable principles that should be applied in arriving at the respective amounts of such charges and credits.

The parties by their respective pleadings agree that the real estate cannot be partitioned in kind without injury and that it should be sold under order of court and the proceeds distributed. Preliminary to such sale and distribution, appellants by their complaint ask that an accounting be had as against John Mooney, and that

the court determine the amount with which he should be charged on account of rents and profits received, and that such amount be considered on distribution.

John Mooney filed a cross-complaint alleging that he had paid out $1,781.39 to discharge a mortgage placed on the fifty-two-acre tract by Patrick Mooney to secure a balance of purchase money, and that he has paid taxes on all the lands involved, aggregating $1,328.22. He alleges, also, that with the full knowledge and consent of all the owners he has expended certain sums in the necessary improvement of the lands, whereby their value is enhanced to the extent of $7,000, the sums expended being as follows: new buildings, $1,375; painting buildings, $140; fire insurance, $100; lightning rods on buildings, $45; clearing lands to prepare them for cultivation, $400; ditching and assessments paid on public ditches, $785; fencing, $450; water well, $125. He asks that the amount with which he should be credited on account of liens discharged and improvements made be ascertained, and that such amount be considered in directing a distribution.

Appellants answered John Mooney's cross-complaint in substance that he discharged such liens and paid the expenses of such improvements from funds derived exclusively from the rents and profits of the lands, and from timber sold therefrom, and that there was a surplus over with which he should be charged on distribution. John Mooney, as administrator of the estate of Bridget Mooney, deceased, widow of Patrick Mooney, was named as a defendant to the complaint and to said cross-complaint. As such administrator he is also an appellee. In such capacity he filed a cross-complaint alleging, among other things, that Bridget Mooney's estate was in process of settlement and that there were unpaid claims. He asks that of the money derived from the sale of the lands the amount representing the in-

terest therein owned by Bridget Mooney at the time of her decease be paid to him as administrator for purposes of completing the settlement of her estate. Proper answers and replies were filed and the cause placed at issue. A trial by the court resulted in a general finding and decree that the parties were the owners of the lands in the shares above indicated, and that such lands should be sold by a commissioner and the proceeds distributed. On account of rents and profits received, and liens discharged, and improvements made, the court found in favor of John Mooney a net credit of $2,886, one-third of which he charged against the interest represented by the estate of Bridget Mooney, and the other two-thirds of which the court distributed against the shares of the parties as the court deemed the equities of the situation required. The one-third of the proceeds, subject to such charges, the court ordered paid to John Mooney as administrator, and the balance thereof, subject to charges, to the owners.

In order that we may determine whether the decree is grounded on error, as asserted by appellants, a general statement of the facts is essential. After the death of Patrick Mooney in 1886, the family living at home consisted of the widow, Martin Mooney, aged about sixteen, John Mooney, aged about twenty-one, Joanna and Mary, each older than John. Thomas Mooney and Margaret Kelsch, the mother of Cecil and Harry, were married and lived elsewhere. Neither John nor Mary ever married. They have continued to live on the farm. Joanna married in about three years after the decease of her father, and since that time has lived elsewhere. Martin left the farm in about six years, and subsequently married. Shortly before Martin left the farm, Harry Kelsch, then a lad about seven years old, became a member of the family, his mother having died. He remained until he was about twenty years old. The

other co-owners lived near the lands during the time when liens were being discharged and improvements made and frequently visited there and had knowledge of what was being done. The two tracts of land owned by Patrick Mooney at the time of his death·do not join. They are about a mile apart. On each tract were buildings of but little value. The fencing was in poor condition. A considerable portion of the land and especially the fifty-two-acre tract was uncleared. Much of it needed drainage. Patrick Mooney bought the fifty-two-acre tract the year before he died and, as we have said, a part of the purchase money represented by a mortgage was unpaid. The members of the family living at home went to work to pay off the mortgage. Apparently by common consent, John, as the oldest son living at home, became manager of the farming and business operations. The widow, assisted by the two daughters while Joanna remained at home, and thereafter by Mary, by the sale of eggs, chickens and butter, paid for all articles required to be purchased for the table, and in addition provided much of the clothing for the members of the family. John, assisted by Martin and Harry Kelsch while they were living in the family, did the farm work. Martin attended the public schools in winter for a year or two, and thereafter attended a secondary school for a while. He taught school two winters before he left home. Harry Kelsch also attended the public schools, and at times worked in factories. All profits of the farm proper were received by John from the time of his father's death until the time of the trial. He used such profits first in discharging the mortgage, paying taxes, etc., and thereafter made improvements from time to time as alleged in his cross-complaint. At times he leased portions of the lands to others for cultivation, collecting and receiving the landlord's share of the crops. Substantially

all, if not àll, of the money expended by him in discharging the lands from liens and in making improvements came from the farm. His own labor and that of Martin and Harry also entered into a part of such improvements. By such a course, in which all the members of the family living at home interested themselves, liens were discharged, valuable improvements were made, and the lands placed in a high state of cultivation. The members of the family living elsewhere received practically nothing from the farm. Twenty dollars was advanced to Cecil and $100 to Joanna at one time. The family accomplished so much that it is to be regretted that they did not succeed in adjusting their accounts without recourse to the courts.

The widow, while living, was the owner of an undivided one-third of the lands. She was therefore entitled to one-third of the rents and profits and

1. was equitably chargeable with one-third of the taxes and expenses of legitimate improvements. The mortgage, although given for purchase money, was primarily a charge against the undivided two-thirds of the land. §§3014, 3033 Burns 1914, §§2483, 2495 R. S. 1881; *Garretson* v. *Garretson* (1909), 43 Ind. App. 688, 88 N. E. 624; *Home Nat. Bank* v. *People's State Bank* (1911), 49 Ind. App. 13, 96 N. E. 710. It is therefore apparent that technical accuracy would

2. require that a somewhat different course be pursued in adjusting the equities involving the widow's interest from what should be followed in determining the rights and liabilities of the children and said grandchildren in their relation to John Mooney, arising out of transactions had after the decease of Patrick Mooney. However, the farm was managed during the widow's lifetime in the same manner as thereafter, John Mooney receiving the profits and paying the taxes and expense of improvements. If, out of the manner

of conducting the farming enterprise, there existed at the decease of the widow a claim in her favor as against John Mooney, or a charge against her in his favor of such a nature that it might have been adjusted in a partition proceeding brought by or against her in her lifetime, such claim in the one case became in effect an asset of her estate, and such charge in the other case became a liability against it. Her estate on her decease descended to her children and said grandchildren augmented by any such claim or reduced by any such charge for purposes of a proceeding such as this; and they thereafter held and owned it in the same relative shares as they theretofore held the undivided two-thirds. We therefore discover no reason why this case may not be considered as if the children and said grandchildren had owned the entire title to the lands after the decease of Patrick Mooney. We shall therefore so consider it.

Proceeding to determine the matters in controversy, it is a general rule, in the application of which by reason of certain equitable considerations that 3. may arise exceptions are recognized, that a cotenant may be required to account only in case he has received rents from third persons or has held possession in hostility to his cotenants and to their exclusion. *Carver* v. *Fennimore* (1888), 116 Ind. 236, 19 N. E. 103; *Overturf* v. *Martin* (1907), 170 Ind. 308, 84 N. E. 531. Where, however, in a proceeding 4. such as this, the cotenants ask an equitable accounting against the occupying tenant, by reason of rents and profits received by him, such occupying tenant in such accounting is entitled to an allowance based on incumbrances paid and discharged by him and advances made for proper and reasonable repairs and improvements. A right to an accounting in such a case is equitable in its nature, and is governed by equitable

principles.   38 Cyc 59; *Carver* v. *Fennimore, supra;*
*Alleman* v. *Hawley* (1889), 117 Ind. 532, 20 N. E. 441;
*Peden* v. *Cavins* (1893), 134 Ind. 494, 34 N. E. 7, 39
Am. St. 276.   In such accounting, each case must be
determined from a consideration of its own character-
izing facts.   *Curtis* v. *Poland* (1886), 66 Tex. 511, 2
S. W. 39.

We do not understand that there is any serious dis-
agreement between the parties respecting the foregoing
propositions.   The substantial controversy here is as
follows:   (1) Appellees argue that John Mooney should
be charged with rents and profits based on the land in
the condition in which it was at the decease of Patrick
Mooney, excluding from consideration the value added
by the subsequent improvements; while it is appellants'
contention that John Mooney should be chargeable with
such rents and profits from and after the decease of
Patrick Mooney, based on the condition of the land
from year to year as it actually was, including value
added by improvements.   (2) As to the allowance for
improvements, it is apparently appellees' position that
John Mooney should be credited with the value added
to the lands by reason of improvements as such added
value exists at the time of inquiry and adjustment;
while appellants apparently contend that John Mooney
should be allowed his legitimate expenditures for im-
provements, not exceeding, however, the value thereby
added to the lands.

We proceed to consider the controverted questions.
The trial was had in 1914.   John Mooney disclosed with
a fair degree of accuracy, and to the apparent
5.    satisfaction of the parties, the actual amount of
the rents and profits received by him for the years
1911 to 1914, both inclusive.   He occupied the land and
conducted the farming enterprise with at least the im-
plied consent of the parties interested.   There is no

suggestion of mismanagement. Under such circumstances, and in a case such as this, governed as it is by equitable principles, it seems apparent that where he himself farmed the land, he should be chargeable only with the landlord's share of the rents and profits as actually realized by him, and that where he leased the lands to others for cropping purposes, he should be held to account for only the rents actually received by him, keeping in mind in adjusting the charges and credits that John Mooney is the owner of one share in the lands. There does not seem to be any serious controversy between the parties respecting such method of settlement where the amount of rents and profits received is ascertained. But for the years after

6. the death of Patrick Mooney, up to and including 1910, John Mooney was not able to enlighten the court with anything approaching accuracy respecting the amount of rents and profits received or realized by him. Under such circumstances, the court properly heard evidence of the rental value of the lands. 38 Cyc 70, note; *McCrum* v. *McCrum* (1905), 36 Ind. App. 636, 76 N. E. 415; *Cain* v. *Cain* (1898), 53 S. C. 350, 31 S. E. 278, 69 Am. St. 863.

Some evidence was introduced by appellants as to such rental value based on the lands as they were from year to year including the improvements placed

7. thereon by John Mooney. The court, however, over objection, heard a lot of evidence respecting such rental value for the years following the death of Patrick Mooney, ending with 1910, based on the hypothesis that no improvements had been added after the death of Patrick Mooney; that is, that new buildings had not been constructed, that no clearing or ditching or fence building had been done, etc. In the motion for a new trial error is predicated on the action of the court in hearing such latter class of evidence. The

record does not disclose that the facts presented by such evidence did not enter into the decision of the court. If erroneously admitted, the hearing of it should therefore be presumed to have been harmful.

Appellees cite in support of the court's ruling the following: *Carver* v. *Fennimore, supra; Hannah* v. *Carver* (1889), 121 Ind. 278, 23 N. E. 93; *Alleman* v. *Hawley, supra; Nelson's Heirs* v. *Clay's Heirs* (1832), 7 J. J. Marsh. (Ky.) 138, 23 Am. Dec. 387; *Early* v. *Friend* (1860), 16 Grat. (Va.) 21, 78 Am. Dec. 649. The general nature of these cases is fairly reflected by *Carver* v. *Fennimore,* first cited. In that case, the occupying tenant or his grantor, having color of title, entered into possession of an unimproved lot with but nominal rental value, claiming in good faith to own the entire title. He made valuable improvements at his own cost. Subsequently it was ascertained that title to one-third of the lot was in appellant, who thereupon brought an action against the occupying tenant to account for rents. The question decided was whether such rents should be based on the value of the lot in its unimproved condition, or as augmented by the improvements. On that question the court said: "The action by one cotenant against another for an accounting for rents is a liberal and equitable action, and equitable defenses may be made, and in such a case if the excluded tenant receives actual compensation for the damages sustained, he has no just ground for complaint. Unless, therefore, some peculiar circumstances are shown, the owner of an undivided interest in land who occupies the whole estate in good faith, under claim and color of title to the whole, and has made permanent and valuable improvements under the mistaken belief that he is the owner of the whole estate, is accountable only for the fair rental value of the property in the condition in which it was when it went into his possession.

The excluded owner or tenant is not, under ordinary circumstances, entitled to the enhanced rental value resulting from the improvements made with the capital of the *bona fide* occupant, or by his grantor from whom he purchased."

The case at bar is distinguishable from those cited. The improvements were not made at the exclusive expense of John Mooney. Such expense was met for the most part, if not entirely, by the application of sums realized from the profits derived from the use of the premises. If such improvements were not to be considered in adjusting the equities between the parties, and the sole duty of the court in the accounting feature of the case were to ascertain what charge should be made aganst John Mooney on account of use and occupation, and he were to receive no credit on account of improvements, it would seem fair and just that such charge be based on the condition of the lands at the decease of Patrick Mooney. In such case, the occupying tenant should have the advantage of the value added to the use by reason of improvements made by him. Here, however, it is conceded that a credit should be entered in favor of John Mooney by reason of improvements. Respecting the rule that in an accounting between cotenants a charge for the use and occupation against an occupying tenant should be based on the value of the real estate exclusive of improvements placed thereon by him, the following is said in 7 R. C. L. 832, 833: "This rule for establishing the measure of a cotenant's liability has been criticised; and it is to be noted that it was established in cases where the improving tenant was not entitled to compensation individually for his improvements. As he could not make a charge for improvements, it was manifestly equitable that he should not be charged rent for such improvements."

In all cases involving an equitable accounting between cotenants where an allowance is claimed by an occupying tenant by reason of improvements made, and where in return his cotenants ask that the value of the use and occupation be considered, courts in adjusting the equities between the parties are guided by a fixed purpose to do exact justice under the facts of each case. *Peden* v. *Cavins, supra; Alleman* v. *Hawley, supra; Martindale* v. *Alexander* (1866), 26 Ind. 104, 89 Am. Dec. 458; *Pulse* v. *Osborn* (1902), 30 Ind. App. 631, 64 N. E. 59. So should this case be determined. Its own facts characterize it. John Mooney concedes that, after the death of his father, the profits of the farming enterprise proper came into his hands. The amount of the net profits was affected by a number of considerations: The widow, in privity with whom all the parties stand, augmented such profits indirectly by her labor for a number of years. Two of the daughters—one for several years, and the other up to the time of the trial—did likewise; likewise a son and a grandson for a number of years. The widow and the parties constituting the family received their maintenance from the farm for the most part. Others contributed no labor and received nothing. It is held that the element of support is proper to be considered in an accounting such as involved here. *Cain* v. *Cain, supra.* As a fund was created by means above indicated, the mortgage was discharged by payments made from time to time, and taxes were met as they accrued. The discharge of the mortgage and the payment of the taxes inured ultimately to the benefit of all the parties. The land, having been relieved of the mortgage, was improved as the farm profits permitted. There is no suggestion that the improvements were improvidently or unnecessarily made. It is a reasonable inference from the evidence

that, with the consent and approval of all the parties, John Mooney not only received the rents and profits, but also made the improvements. In a sense he was the representative of the parties in both capacities. The improvements were paid for out of the rents and profits. John Mooney's labor, as well as the labor of certain others of the parties to some extent, entered into the improvements. While out of the making of the improvements an equity admittedly arose in favor of John Mooney for adjustment in an action such as this, the improvements became a part of the realty, and hence augmented the value of the interest of each of the parties therein. That John Mooney so considered it is indicated by his bill of particulars, wherein he asks a credit for taxes paid on the lands based on their value as improved, and also a credit for insuring and painting the buildings and the like. The discharge of liens and the making of improvements by an occupying tenant using the rents and profits, are under some circumstances deemed to be the joint acts of all the tenants. 7 R. C. L. 825; *Ellis* v. *Snyder* (1911), 83 Kan. 638, 112 Pac. 594, 32 L. R. A. (N. S.) 253; *Clute* v. *Clute* (1910), 197 N. Y. 439, 90 N. E. 988, 27 L. R. A. (N. S.) 146, 134 Am. St. 891. And such improvements are regarded as paid *pro tanto* by the rents and profits as they accrue, even in the absence of an admission to that effect. *Vaughan* v. *Langford* (1908), 81 S. C. 282, 62 S. E. 316, 128 Am. St. 912, 16 Ann. Cas. 91; *Cain* v. *Cain, supra;* 7 R. C. L. 843.

It results that it seems to us apparent, under the facts here, that the charges for use and occupation should be based on the actual condition of the real estate from year to year, including improvements made after the death of Patrick Mooney.

We now direct our attention more particularly to the question of compensation for improvements. At the trial the court heard evidence as to the actual cost of the improvements, and also as to the value added to the lands thereby. We are unable to determine which of the rules thereby indicated guided the court in its decision. In cases of equitable accounting between tenants involving improvements and the value of use and occupation, courts, influenced by the particular facts, have promulgated and applied various rules in allowing credits and in making charges against the respective parties. Thus, in *Eighmey* v. *Thayer* (1904), 135 Mich. 682, 98 N. W. 734, 66 L. R. A. 915, the court held that under the facts the occupying tenant should be credited with the cost of the improvements made by him, not exceeding, however, the value thereby added to the land. In *Peden* v. *Cavins, supra,* involving the question of the right to an allowance for improvements under facts very different from those here, rather than the rule that governs in determining the amount of such allowance, the court quotes from Freeman on Cotenancy, §510, to the effect that in making such an allowance courts will be guided by a purpose to do justice between the parties, and that the cotenant out of possession "will therefore be charged, not with the price of the improvements, but only with his proportion of the amount which at the time of partition they add to the value of the premises." To the same effect is *Ward* v. *Ward* (1895), 40 W. Va. 611, 21 S. E. 746, 29 L. R. A. 449, 52 Am. St. 911, with an added statement that where the improvements are made by agreement they should be allowed at their cost. We shall not attempt to distinguish the cases or to harmonize them by an appeal to the facts upon which they are grounded. We are clear as to what should be the method of adjustment, under the facts of

this case. Rents and profits here were applied in making improvements. When subjected to an equitable accounting, as here, such rents and profits must be considered as belonging beneficially to the parties. The improvements were made and the rents so applied with at least the tacit consent of the parties. The land as owned by the parties was thereby augmented in value. The co-owners then in a sense received the benefit of the improvements as made; in addition, some of them received such benefits, in that for a portion of the time they lived on and enjoyed the premises; rent as we have indicated should be charged against the occupying tenant on a basis of such augmented value. It may be said, also, that by the application of the rents to the expenses of making improvements, with the, at least, implied consent of the parties interested, such rents were in fact beneficially paid and delivered to those who were equitably entitled to receive them. We therefore conclude that John should be credited, at their cost, with improvements made by him. The value of John's services, and to some extent the labor of certain other parties entered into such improvements, and certain of the parties were at times maintained out of the profits of the enterprise.

We direct the court, in taking an account on a retrial, to charge John Mooney with the value of the use and occupation of the lands on a basis of rents and profits actually received for those years as to which the facts are ascertainable; for other years on a basis of rental value estimated on the lands as improved from time to time, and that improvements be credited at their costs. Sums advanced to any of the parties in cash under circumstances not indicating a gift, and which thus indirectly depleted the fund derived from rents and profits, should be taken into consideration. There is not that disparity between the amount of charges and credits

from time to time as to call for interest on either side of the account. With these general directions, the case is of a nature to.call for the broad judicial wisdom of the trial court. We are supported somewhat by the following: *Cheney* v. *Ricks* (1900), 187 Ill. 171, 58 N. E. 234; *Armstrong* v. *Bryant* (1891), 13 Ky. Law Rep. 128, 16 S. W. 463; *Dewing* v. *Dewing* (1895), 165 Mass. 230, 42 N. E. 1128; *Contaldi* v. *Errichetti* (1906), 79 Conn. 273, 64 Atl. 211.

We would not be understood as indicating anything respecting the state of the account between the parties, or whether the net credits, if any, to John Mooney, as found by the court, are erroneous in amount. Having-directed the course to be pursued, the state of the account is for the trial court

The judgment is reversed, with instructions to the trial court to sustain the motion for a new trial, and for further proceedings in harmony with this opinion.

NOTE.—Reported in 116 N. E. 60. Partition in connection with the- distribution of decedents' estates, 41 Am. St. 142. See under (2-5, 7, 9, 10) 30 Cyc 232; (8) 38 Cyc 59.