12797

SMITH v. TAPP, ADMINISTRATOR

(151 S. E., 221)

34

*Messrs. Bomar & Osborne,* for appellant,

*Messrs. J. D. Lanford, and J. Hertz Brown,* for respondent,

January 3, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The conclusions of Hon. T. S. Sease, Circuit Judge, in this cause, are satisfactory to this Court, and his decree, which will be reported, is hereby affirmed.

MR. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES STABLER and CARTER concur in result.

MR. JUSTICE COTHRAN (dissenting) : This is an action by the plaintiff, John T. Smith, against the defendant, W. J. Tapp, as administrator of the estate of Berry Wilson, for damages on account of the alleged breach of warranty in a deed conveying a tract of land, executed by Berry Wilson to the plaintiff. The defendant set up a counterclaim for damages on account of the alleged breach of a contract, by which the plaintiff, John T. Smith, assumed the payment of an outstanding mortgage upon the property as the sole consideration of the deed.

The facts of the case are extremely complicated; a detailed statement of them appears essential in reaching the justice of the controversy.

In December, 1907, the intestate, Berry Wilson, owned, or thought he owned, in fee simple, five distinct parcels of real estate : (1) His home place; (2) an 18-acre tract; (3) a lot at Campobello; (4) a 70½-acre tract, which will be referred to as "Tract A"; and a 70½-acre tract of the Sanford Smith property, which will be referred to as the "Smith Tract B."

Berry Wilson had mortgaged all five of these parcels of land to W. S. Caldwell, to secure a note upon which there was due in December, 1907, about $4,550.00. He was getting

old and was much concerned about this debt, which was a lien upon his home and practically all of the land that he owned.

The plaintiff, his son-in-law, it must be presumed, was cognizant of the situation and moving impulse of Wilson. On December 5, 1907, Wilson conveyed to the plaintiff the two tracts of 70½ acres each, tract A and Smith tract B; the consideration of the deed was solely the assumption by plaintiff of the Caldwell mortgage of $4,550. The plaintiff went immediately into possession of the two tracts conveyed, aggregating 141 acres, and continued in possession until 1922; the old man naturally resting under the comforting assurance that the disturbing debt had been taken off his shoulders, and that the other three parcels of land, including the home place, *were his forever,* subject to existing mortgages upon them.

During the succeeding years, from 1907 to 1921, the plaintiff, all the while being in possession of the two tracts, made sundry payments upon the Caldwell mortgage, upon which in 1921 there was still unpaid $4,004.15, besides attorney's fees at 10 per cent., hardly paying anything upon the original undertaking of $4,550.

In 1920 the storm broke. The 70½-acre tract, Smith tract B, had formerly belonged to Sanford Smith, grandfather of the plaintiff. In 1890 Sanford Smith had conveyed the tract to his two daughters, Sarah and Vianna, in fee conditional, and in 1894 they had conveyed it in *fee simple* to the intestate, Berry Wilson. Vianna, one of the daughters, grantees of their father, Sanford Smith, died in 1901, intestate, never having had issue; the other daughter, Sarah (now known as Sallie Pitman), was alive at the time of the commencement of the present action, 1924, aged 78; she also never had issue.

Upon the death of Vianna without having had issue, the undivided half interest which had been conveyed to her reverted to the estate of Sanford Smith, and vested in his

heirs at law, who at that time were a son, J. R. Smith, the daughter, Sallie Pitman, and two others, not named in the record for appeal. J. R. Smith had seven children when he died in 1915, one of whom was the plaintiff, John T. Smith.

Each of the children of Sanford Smith was entitled to one-fourth undivided interest in the one-half interest of Vianna which reverted to the estate, and the plaintiff, upon the death of his father, J. R. Smith, became entitled to one-seventh of his father's interest, which was one-fourth of one-half, one-eighth; one-seventh of one-eighth gave him one fifty-sixth interest. The daughter, Sallie Pitman, having conveyed her interest in the tract in fee simple by warranty deed to Berry Wilson, who conveyed to the plaintiff, the plaintiff became entitled to the interest of Sallie Pitman in the half interest of Vianna which reverted; that gave him one-fourth of one-half, one-eighth, additional. By the conveyances referred to John T. Smith also became entitled to the half interest which had been conveyed to Sallie Pitman. The master treated this fee conditional estate of Sallie Pitman (she never having had issue and at the time being beyond the child-bearing age) as a life estate, and held that under the case of *Cain v. Cain*, 53 S. C., 350, 31 S. E., 278, 69 Am. St. Rep., 863, this life estate was equivalent to one-half of the fee-simple interest, which was one-half, and that this one-fourth, added to the inherited interests of one fifty-sixth and one-eighth, gave the plaintiff eleven twenty-eighths of the whole. The plaintiff was a party to the partition proceeding, but Wilson was not, and was not bound thereby as the plaintiff was. Although for practical purposes the interest of Sallie Pitman was equivalent to a life estate under the circumstance, at the same time legally it was not, but continued as it had been a fee conditional, which passed to Wilson under her deed, and from him to the plaintiff. The plaintiff had no right to treat it as a life estate without the concurrence of Wilson. So that the real interest which Smith acquired was one fifty-sixth plus

one-eighth by inheritance (one-seventh), and the fee conditional of Sallie Pitman.

Accordingly, in 1920, certain of the heirs at law of Sanford Smith instituted an action against the plaintiff in this action, John T. Smith, and others, for a partition of the tract of land, along the lines above indicated. In that action the defendants were Sallie Pitman, the plaintiff herein, John T. Smith, certain other heirs of Sanford Smith, and the executors of the mortgagee W. S. Caldwell. The plaintiff in the present action, defendant in that, John T. Smith, claimed ownership of the land in fee, and set up adverse possession and a claim of $2,500.00 for improvements. The plaintiff in that action demanded an account of the rents and profits of the land by John T. Smith while in possession for 14 years. The case was referred to the master, who filed a report, dated July 23, 1921, holding that John T. Smith was entitled to an interest of eleven twenty-eighths in the tract, subject to the Caldwell mortgage of $4,004.15, plus attorney's fees, and that the remainder, seventeen twenty-eighths, was distributable to the other heirs of Sanford Smith, not subject to the Caldwell mortgage. He held, also, that the claim of John T. Smith for improvements should be set off against his accountability for rents and profits. To this report John T. Smith filed exceptions, and, pending a hearing, a consent decree was signed by his Honor Judge Sease, dated December 8, 1921, ordering a sale of the tract for partition, the proceeds of sale to be held for the further order of the Court. The property was sold under this decree on January 4, 1922, and purchased by one J. V. Henson for $4,300, who complied.

Later in 1922 the matter came up before his Honor, Judge Sease, who filed a final decree, dated December 13, 1922, in which he confirmed the master's report in all respects, except that he adjudged, "that the master's report be modified by allowing to the defendant John T. Smith the sum of $1,000.00, from the proceeds of the sale of the real estate,

as his full share therein, instead of the eleven twenty-eighths part thereof, as allowed in the master's report."

John T. Smith appears to have acquiesced in this decree, as no appeal is noted in the record by him from it. The amount, $1,000.00, allowed thereby to John T. Smith, was applied by the master to the Caldwell mortgage on December 27, 1922. (It will be observed in passing, that the security of the Caldwell mortgage, which covered the tract being partitioned, was diminished by the difference between $4,300.00, the sale price of the land, and the $1,000.00, John T. Smith's interest, applied to it.)

After the sale of the tract in January, 1922, pursuant to the consent decree of December, 1921, to wit, in February, 1922, an action to foreclose the Caldwell mortgage upon the four remaining parcels of land, Nos. 1, 2, 3, and 4 above described (evidently omitting No. 5, the tract partitioned), was instituted, and resulted in a decree of foreclosure and sale. The sale apparently was had in the fall of 1922, and the property brought:

| | | |
|---|---|---:|
| (1) | The home place | $ 7,500.00 |
| (2) | The 18-acre tract | 750.00 |
| (3) | The Campobello lot | 200.00 |
| (4) | Tract A, the other 70½-acre tract | 3,525.00 |
| | Total | $ 11,970.00 |

These tracts were covered by other mortgages than the Caldwell mortgage.

| | |
|---|---:|
| There was due upon the Caldwell mortgage | $ 4,912.13 |
| Subject to the credit of the interest of John T. Smith, paid by the master upon it, as above related | 1,000.00 |
| Balance | $ 3,912.13 |
| To this balance was applied the proceeds of the sale of Tract A | 3,525.00 |
| Leaving | $ 387.13 |

Which was paid out of the proceeds of parcels 2 and 3.

This amount, $387.13, represents the amount contributed by Berry Wilson to the payment of the Caldwell mortgage, the payment of which John T. Smith had assumed. He had title to both tracts A and B (4 and 5); they were both covered by the Caldwell mortgage, which he had assumed; he has no right to complain that the proceeds of tract A, $3,525, and of his interest in tract B, $1,000, were applied to the Caldwell mortgage; and Berry Wilson would have no right to compensation from John T. Smith to a greater extent than the proceeds of the sale of his land, $387.13, went to extinguish that mortgage, plus $94.42 costs, total $481.55, with interest from January 1, 1923, to January 1, 1930, $200.20; total, $681.75.

After, then, the sale of tract B for partition in January, 1922, and the sale of the other four tracts under foreclosure of the Caldwell mortgage in November, 1922, to wit, in 1924, John T. Smith instituted the present action for damages on account of the breach of warranty contained in the deed to tract B from Berry Wilson to him. He fixes his damages at $2,393.25, the alleged purchase price of the tract, with interest *from the date of his purchase,* December 5, 1907, totaling $4,567.40.

The defendant answered the complaint, admitting the execution of the deed, denying the other allegations of the complaint, and setting up a counterclaim of $4,500.00, on account of the breach of the plaintiff's contract to pay the Caldwell mortgage as the sole consideration of the deed. The case was referred generally to the master, who filed a report, dated November 18, 1926. Upon exceptions it was confirmed, except in the particular noted. From the decree of his Honor, Judge Sease, the defendant has appealed.

If John T. Smith had not assumed the payment of the Caldwell mortgage, I think that the breach of warranty would have been measured by the value of the entire tract Smith tract B, the tract that was sold for partition, regard-

less of the fact that he had inherited one-seventh of it, as explained; otherwise, he would have received no benefit from his inheritance, and Wilson, who had no interest in that inheritance, would have received the benefit of it in the reduction of his breach of warranty liability. But, as John T. Smith had assumed the payment of the Caldwell mortgage, which covered the entire interests in that tract, including both his inherited interest and the fee conditional interest of Sallie Pitman in it, he cannot complain that his interests were available to Wilson in the reduction of his liability.

I think that the proper decision of this controversy should have been upon these lines:

At the time of the partition sale, which is claimed to have constituted the eviction of which he claims, John T. Smith had personally one-seventh interest in tract B, that is the one fifty-sixth inherited from his father and the one-eighth acquired by the deed of Sallie Pitman. He also acquired from the deed of Sallie Pitman her interest in the fee conditional created by the deed of her father, which was one-half, practically, under the circumstances, a life estate; that is, the right to the possession during the life of Sallie Pitman, for the reverter could not take place until she died. He was therefore evicted out of six-sevenths of the tract, subject to the right of possession of one-half of it during the life of Sallie Pitman, and the measure of his damages under the Statute 3 Code, § 5306, is "the amount of the purchase money at the time of alienation, with legal interest from the time of eviction." Tracts A and B, covered by the Wilson deed, contained each the same area and were practically of the same value; the consideration was the assumption of the Caldwell mortgage, upon which the master finds that there was then unpaid the amount of $4,563.08, which included 10 per cent. attorney's fees. The real amount unpaid, less such attorney's fees, was $4,148.25. It is not fair to charge Wilson with the amount of the attorney's fees, which had not been incurred, and could not have been, if John T. Smith had

carried out his obligation to pay the mortgage off and relieve Wilson's other land from its lien. The "amount of the purchase price at the time of the alienation" should therefore be one-half of $4,148.25, as that included both tracts A and B, $2,074.13. The interest upon this from January 4, 1922, the date of the partition sale, to December 13, 1922, the date of the foreclosure sale, would be $169.35; total, $2,243.47. From this should be deducted the amount and costs contributed by the estate of Wilson at that time, $481-.55, leaving $1,761.92; from this should be deducted the value of (practically) the life estate of Sallie Pitman in one-half of the tract. What that is I have no data upon which to form an opinion.

I have not considered the question of the defendant's alleged counterclaim as there is no exception raising it.

I think that the decree of his Honor, Judge Sease, should be modified, and the following adjudications established:

(1) That the plaintiff is entitled to $2,243.47, with interest from December 13, 1922.

(2) That the defendant is entitled to a credit upon this amount, of $481.55, with interest from December 27, 1922.

(3) That the defendant is entitled to a further credit of the value of the interest of Sallie Pitman in one-half of tract B, to be ascertained by a reference to the Master.

(4) That, if the credits referred to exceed the liability in (1) *supra,* the defendant be awarded judgment therefor against the plaintiff.