# Gayle *et al. v.* Johnston.

*Bill in Equity for Partition.*

1. *Bill for partition by tenant for life; parties to.*—A tenant for life may maintain a bill in equity for the partition of lands, and it is the better practice to make all the persons having an interest, tenants for life and remaindermen, parties to the suit.

2. *Remainderman necessary party.*—If a remainderman is not made a party to the suit, his rights are not affected by any decree that may be rendered; and if an infant remainderman is made a party, but is not

[Gayle et al. v. Johnston.]

properly brought before the court, the decree will be reversed on error, no matter how the question is presented.

3. *Minors; how brought before the court.*—When the complainant is the father of an infant defendant, whose mother is dead, service of process should be made on her general guardian, if she has any; and if process is served on the person who is averred to be her guardian, but the bill is not sworn to, and there is no affidavit of the fact that he is such guardian, and no proof of the fact, the infant is not properly before the court.

4. *Appearance; record must show throughout.*—Where the defendants who have answered are actually present in court, either in person or by their solicitors or guardians *ad litem*, at the allowance of an amendment, they shall be deemed to have notice thereof; but the entries of record, made at the time, must show their presence, and when they do not, a recital in a subsequent decree *pro confesso*, taken before the register, is not sufficient.

5. *Tenants in common; use and occupation.*—At common law, a tenant in common was not liable to his co-tenant for use and occupation, unless there was an actual eviction, or an agreement to pay rent; and the English statute (4th and 5th Anne) changing the rule, having been enacted after the settlement of this country, is not of force with us.

6. *Same; account for rents received.*—For rents actually received one tenant in common is liable to account to his co-tenant; but, when the rents were received from a tenant to whom necessary advances to make a crop were supplied, such advances, and other necessary costs and expenses incurred, must be deducted from the gross amount received.

APPEAL from Selma City Court (equity side). Heard before Hon. J. HARALSON.

BROOKS & ROY, for appellants.

SATTERFIELD & YOUNG, *contra.*

STONE, C. J.—Mary L. Gayle was the owner of a tract of land of some thirteen hundred and seventy acres, and died leaving a last will and testament, which was duly probated. She left five children—three daughters, Anna M., Rebecca D. and Lou. Reese, and two sons, Thomas G. and Billups J. Gayle—and by her will devised her real estate to them equally. She also left four lots in the town of Cahaba, devised, as the plantation was, to her children. The real estate thus became the property of the five children, held in equal, undivided interest as tenants in common, under the statutes of this State.—Code of 1876, §§ 2191, 2273. Lou. Reese died intestate, a minor and unmarried, and her brothers and sisters, four in number, became her heirs-at-law. Rebecca D. intermarried with William S. Johnston, and had issue, Fannie D. and Lula Reese Johnston, and died intestate, leaving her husband, the said William S. Johnston, and her said two children surviving her—the children being infants of very tender years. Her death occurred after the death of her sister, Lou Reese Gayle. Subse-

[Gayle et al. v. Johnston.]

quently Fannie D. Johnston died, an infant, not exceeding six years old, leaving Lula Reese Johnston her heir at law, and sole owner of her mother's interest in the real estate of which Mary L. Gayle died seized, in remainder after the termination of William S. Johnston's life estate in such undivided interest. Other persons own or claim interests in the shares of Anna M., Thomas G. and Billups J. Gayle in said real estate, under incumbrances alleged to have been created by them after their rights accrued under the will, but this record presents no question for our decision, arising out of such incumbrances or claims. We need not state them.

The present bill was filed by William S. Johnston, owner of a life estate in the undivided interest of his deceased wife, and prays to have partition of said lands, averring that they can be equally divided and partitioned by metes and bounds, without a sale. The bill makes the living co-tenants and the incumbrancers on their several interests parties defendant, and also makes the said Lula Reese Johnston a party defendant. There is in the record an affidavit made by complainant's solicitor, that Lula R. Johnston was an infant under fourteen years of age when the affidavit was made—two months after the bill was filed. A guardian *ad litem* was appointed for the infant defendant, he having consented in writing to act as such, and he put in the customary answer, denying the averments of the bill. Testimony was taken, and the case was submitted and tried on its merits. The chancellor decreed that complainant was entitled to partition; and from that decree the defendants appealed to this court. Only Anna M. Gayle, Thomas G. Gayle and Billups J. Gayle assign errors.

It is contended for appellants that William S. Johnston, being only tenant for life, can not maintain a bill for partition; and that Lula Reese Johnston, the infant, was not properly served with summons to bring her into court. We will consider these questions in connection with each other; for if partition had at the suit of the life tenant does not conclude nor affect the rights of the tenant in remainder, we can perceive no reason why other defendants should complain of irregularity in the service, nor indeed why such remainderman should be made a party. One appellant can not complain of error committed against another, unless the error affects the party complaining injuriously. Hence, if partition obtained at the instance of a tenant for life be binding and operative only during the life tenancy, there can be no reason for burdening the remainderman with the expense of such fruitless contention.

Some of the older authorities leave the impression that partition obtained at the suit of a life tenant, or tenant for a term of years, is, and can be binding only during the continuance of

[Gayle et al. v. Johnston.]

the term, or particular estate; and that when the particular estate falls in, there will be a relapse to the *status* of occupancy in common, unless other proceedings in partition be had. There can be no question that the remainderman will stand unaffected by the decree, if he is not made a party, and brought properly before the court that his interests may be fairly and fully represented.— *Warner v. Baynes,* Ambler 589; *Wills v. Slade,* 6 Ves. 498; *Baring v. Nash,* 1 Ves. & B. 550; *Wotten v. Copeland,* 7 John. Ch. 140; 1 Sto. Eq. Ju. § 656.

The better rule permits all the interests to be brought before the court and represented, so that the decree pronounced shall bind all interests, and conclude the claims of remaindermen as well as those of the termors, or life tenants. "If a complete partition be desired, all parties interested may be brought before the court, and all estates, whether in possession or expectancy, including those of infants and all persons not *in esse,* may be bound by the decree."—Adams Eq., *230; *Lord Brook v. Lord Hertford,* 2 Peere Wms. 518; *Gaskell v. Gaskell,* 6 Sim. 643; *Striker v. Mott,* 2 Paige 387; *Woodworth v. Campbell,* 5 Paige 518; Freeman on Co. & Part. §§ 439 to 441; *Young v. Rathborn,* 1 C. E. Green. 224; *Maxwell v. Gretsam,* 11 Vr. 383; *Bromberger v. Clippenger,* 5 Watts & S. 311. The latter rule is so much more promotive of the interest of the parties; contributes so much more effectively to the improvement and preservation of the estate, that it should always be pursued when practicable. The present bill makes the remainderman a party, and therefore proves its purpose is to obtain complete, as distinguished from temporary partition.

We will be pardoned for saying that in a case like this, which deeply concerns the interests of an infant of tender years, the chancellor cannot well be too watchful of the rights of such infant. If there be any room for doubt or uncertainty, whether the lands allotted to him are of fairly equal value with the other shares, the reported partition should not be confirmed, without reference to the register, and satisfactory report thereon.

The present bill being framed for complete partition, no decree pronounced against the infant, Lula Reese Johnston, will be regular, unless she was served with summons in the manner the statute and rule of practice direct—*Clark v. Gilmer,* 28 Ala. 265. And if the service in this case was not made according to rule, it is our duty to reverse the decree, no matter how that question is brought before us. Circumstanced as this infant was, her interest being in law adverse to that of her father, and she having no mother, her general guardian, if she had one, was the proper person to receive service for her.—Rule 23 of Chancery Practice. The bill avers that Harry Toulmin is the guardian of Lula Reese Johnston, and summons for her

[Gayle et al. v. Johnston.]

was served on him. He was not made a party as guardian. The bill was not sworn to, and no affidavit was filed, affirming that he had been appointed, or was her guardian. This averment of the bill was denied by the defendants who answered, and the record contains no proof that he was such guardian. The record fails to show the service on her was regular, and for this error the decree of the chancellor must be reversed.—*McIntosh v. Atkinson*, 63 Ala. 241; *Cook v. Rogers*, 64 Ala. 406. We will add, if the bill had been sworn to, or if an affidavit had been filed with it, affirming that Toulmin was her general, or regularly appointed guardian, this would have been sufficient, in the absence of a plea, or express denial in the answer that he was such guardian. We will add further, that when suit is by, or against a person in his representative capacity—as administrator or guardian for instance—such representative relation need not be proved, unless directly put in issue.

A second error insisted on, is the asserted failure of the record to show that notice of the amendment to the bill was served on the defendants who had previously answered the original bill; and that decree *pro confesso* was taken against them without such previous service. Rule of practice No. 47, provides, that "where the defendants who have answered are actually present in court, either in person or by their solicitors or guardians *ad litem*, at the allowance of the amendment, they shall be deemed to have notice thereof." The amendment in this case was by interlineation in ink of a different color, and was allowed in term time, February 17, 1885. The entries on the record made at that time, fail to show the defendants were actually present in court in person, or by their solicitors. The guardian *ad litem* for the infant answered, and the other defendants failed to answer the amendment. On the 25th May, 1885, a decree *pro confesso* was entered up by the register against the defendants, who had answered the original bill, but had failed to answer the amendment. In this decretal order, the register recites that the said defendants, Anna M., Thomas G. and Billups J. Gayle, "were present in open court, and had notice of the allowance of such amendment." The evidence on which this recital was based is not shown by the record. As we have said, the order by which the amendment was allowed makes no mention of the actual presence of the defendants, either by themselves or counsel. The register could not rightfully consult his personal recollection of what had occurred, nor should he have received extrinsic evidence of the fact. *McDougald v. Dougherty*, 39 Ala. 409, 431. There was no legal evidence that the three defendants named—the only adult defendants who had answered—were actually present in

court when the amendment was allowed; and the decree *pro confesso* was improperly granted, This question, however, should have been raised before the chancellor, and can not be raised here for the first time.

The bill in this case seeks also to have Anna M. Gayle and Billups J. Gayle held to account for rents of the property, alleged to have been received and appropriated by them during the years 1883 and 1884. No recovery is sought for the mere use and occupation. Under our rulings such could not be had, unless the co-tenant complaining had been actually evicted, forcibly kept out of possession, or there had been an agreement to pay rent.—*Newbold v. Smart*, 67 Ala. 326 ; *Terrell v. Cunningham*, 70 Ala. 100 ; *Wilkinson v. Stuart*, 74 Ala. 198 ; *McMath v. DeBardelaben*, 75 Ala. 68 ; *Sargent v. Parsons*, 12 Mass. 149. Such is the rule of the common law. In England the statute of 4 and 5 Anne was so interpreted as to give a right of recovery for mere use and occupation by one part owner against another ; and similar statutes have been enacted in some of the States, with a like interpretation. We have no such statute ; and the statute of Anne being enacted after the settlement of this country, we are left under the common law rule, which denies such recovery.

The precise form of the claim in this case is, that for the year 1883, Anna M. Gayle let the premises to rent at an agreed money rental of two hundred dollars, in addition to repairs to be made, and that she has collected and withholds the rent. We think it clear, complainant is entitled to relief as to this sum, and that the chancellor did not err in so decreeing. The bill also claims account and relief as to rentals alleged to have been realized in and for the year 1884 by Anna M. and Billups J. Gayle.

As to the year 1884 the facts are substantially as follows : The cultivable land on the plantation was about six hundred acres, of which Billups J. Gayle and Anna M. took control of four hundred and twenty-five acres in unequal parts, and let the most of it to rent. One hundred and seventy-five acres of the cultivable land were left uncultivated and undisturbed. Billups J. testifies that this 175 acres was so left that William S. Johnston might cultivate or dispose of it at his pleasure ; but it is not shown that he was notified it was so left for his use. He did not occupy it, and gave it no attention. It lay fallow during the year. The 425 acres were chiefly let in small lots to several freedmen, who were unable to secure the rent, or to furnish team and supplies to cultivate a crop ; and the testimony shows that without such assistance rendered to them, they could not have been obtained as tenants. The real transaction was, that Anna M. and Billups J., as part of the contract

[Gayle et al. v. Johnston.]

of letting, undertook to furnish the tenants with teams and provisions; and that to enable them to do so, they pledged the rent notes or contracts, and mortgaged their interest in the lands to a commission merchant, to raise the means with which to supply the tenants. The testimony tends strongly to show that tenants on the lands could not have been obtained on any terms less onerous. We need not decide this, however, for the inquiry is not, what rents could have been realized with present management. They owed no duty to the complainant in that regard. It was his duty to look after his own interest; and he had no greater right to demand or expect their care and diligence in making the common property productive, than they had to require the same service of him. All he can require of them is, that of the rents actually received by them, they shall share with him to the extent of his interest. Now, if furnishing supplies was one of the conditions of the letting, and supplies were accordingly furnished, without which there would have been no cultivation, no crop, and no rent paid, are not the supplies a part of the expense of the cultivation, of the crop, and of the rent-bearing fund? And can it be said that rent has been realized, until all these necessary, preliminary expenditures are reimbursed? and will the co-tenant be allowed to ratify, claim and enjoy his share of the nominal product of the letting, without bearing his proportion of the expense which produced it?

In *Ruffners v. Lewis*, 7 Leigh 720, one of the questions arose on a partition of lands, and a settlement of the account for profits realized from the common property. The lands lay in the Kanawha section, and were what are there known as salt lands. One of the common owners had experimented, and, as was necessary, had sunk wells as a means of reaching the salt-bearing water, and had incurred other expenses. Some of their experiments were failures, entailing loss. Others were successful, yielding a profit. It was sought to charge him with the profits, and leave him to bear the losses. In that State—[Virginia]—there is a statute modifying the common law rule, and partaking of the nature of the statute of 4 and 5 Anne. The court, President Tucker, said: "I am clearly of opinion that the defendants were not only fairly entitled to a credit for their expenses and actual services in the successful operation which terminated in rendering the property of great value, but also for their expenses, labor and services in their unsuccessful experiments. The plaintiffs, if they will have advantage from their successes, must be content to share in their disappointments and failures. He who takes the profits must share the burden." Carr, J., said: "The Ruffners must be treated as tenants in common with Prior; not as trespassers. They are liable for a fair share of the profits, and entitled to full

26

[McMillan et als. v. Rushing et als.]

compensation for their expenses fairly and reasonably incurred, as well as those attending their abortive efforts to find water, as their more fortunate ones."—*Irvine v. Hanlin*, 1 Serg. & R. 219; Freeman C. & P., § 271; *Early v. Friend*, 16 Gratt. 21; *Sargent v. Parsons*, 12 Mass. 149.

The appellants, Anna M. and Billups J. Gayle, are liable to the complainant for his share—not of the gross rents they apparently received, but for the net sum realized, after deducting the expenses and losses incurred in having the crops grown and brought to market.

Reversed and remanded.