## Gruelle's Administrators v. Houchen.

(Decided November 9, 1926.)

### Appeal from Pendleton Circuit Court.

1. Executors and Administrators.—Evidence held not to prove express contract by grandmother to pay granddaughter for services performed in waiting on former until her death.·

2. Executors and Administrators—Where Relatives Reside Together as One Family, One Performing Services for One Becoming Sick or Infirm Cannot Recover Without Alleging and Proving Express Contract.—Where persons related by blood or marriage reside together as one family for mutual convenience of all, one performing services for another, who becomes sick or infirm, cannot recover therefor without alleging and proving express contract.

3. Executors and Administrators.—To establish express contract to pay for services performed for sick or infirm person by relative, residing with her, stricter proof is required than in ordinary case.

4. Executors and Administrators—Law Presumes that Neither Parent nor Child, Grandmother nor Granddaughter, Residing as Family in Same House, is Obliged to Pay for Services Performed. —Law recognizes child's obligation to see that his aged parent is properly nourished, clothed, and cared for, and presumes that arrangement whereby parent and child or grandmother and granddaughter reside together as family in same house, and render mutual services, is for their mutual benefit, and that neither is obliged to pay the other for services performed.

5. Executors and Administrators.—Expressions by feeble old relative to younger member of household, such as "I expect to see you paid," or "when I die you will be paid," are insufficient to establish contract to pay for services.

M. C. SWINFORD, LESLIE T, APPLEGATE and A. H. BARKER for appellants.

W. A. BYRON, ALLEN D. COLE and N. W. BOWMAN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellee, Houchen, brought this suit in the Pendleton circuit court to recover of the estate of her grandmother, Mary E. Gruelle, through her administrators, $7,990.00 for services in waiting upon her up to her death, September 28th, 1923, and was awarded a verdict and judgment for $3,000.00, and the administrators of Mrs. Gruelle appeal.

It is alleged in appellee's petition that the sum is due for "waiting on, caring for and nursing said Mary E. Gruelle, which services were done and performed by plaintiff for said deceased at her special insistence and request between January 1, 1920, and September 28, 1923; the plaintiff did and performed said services for 195 weeks at the price of $40.97½ per week, amounting to $7,990.00; that said amount is just, due and wholly unpaid, and the plaintiff believes she should recover of the defendant the said sum of $7,990.00." With the petition was filed an itemized statement of the account which reads:

"Four years nursing and taking care of Mrs. Mary E. Gruelle, deceased, prior to her death in 1923, $7,990.00."

The answer put in issue the right of appellant, Houchen, to recover any amount whatever. By the second paragraph of the answer it is pleaded that appellee "is the granddaughter of Mary E. Gruelle, and lived in the home of her grandmother in Pendleton county, Kentucky, for many years prior to her marriage, and that the plaintiff and decedent, with plaintiff's family, occupied the same home during the whole of the time described in plaintiff's petition, and for which period of time the plaintiff herein sues for services." Further pleading, it is averred that the grandmother and granddaughter, together with the latter's family, lived as one family in the home of the grandmother by mutual arrangement, and that the services, if any, rendered by the granddaughter to the deceased were rendered as a gratuity and for the comfort and happiness of both of them and was not rendered with intention on the part of the grandmother of paying for the same, nor with the expectation on the part of the granddaughter of receiving pay. From the record we learn that the appellee was named for her grandmother and that from her early childhood until the death of the grandmother they lived together. When the granddaughter married, about the time appellee was eighteen years old, she was living with her grandmother, but her husband, who had been in Detroit, desired to return to that city to live and was about to take Mary with him when the grandmother interceded and induced the young people to remain in Kentucky and live with her. Both the father and mother of appellee testified in her behalf, each stating the conversation and agreement be-

tween the grandmother and granddaughter with respect to the latter remaining in Kentucky. On this subject the father said "they were fixing to go to Detroit and Mrs. Gruelle said that Mary had been with her so long, wanted her to stay with her and they made a contract for her to stay with her." When asked to state the terms of the contract the father of appellee said:

"Mary, the plaintiff, was to help her do the work, and she told her she would help her do the work; Mrs. Gruelle was able at that time to do some of the work and Mrs. Gruelle said if Mary would stay with her and help her she would board her and Harry and furnish everything and the house if Harry would furnish kindling and coal and attend garden and milk cow, probably.

"Q. Anything said about who was to do the cooking? A. Not at that time. Mrs. Gruelle was able to do some cooking, but couldn't sweep and make beds."

The mother, testifying for her daughter, said that she was present and heard the conversation which outlined the contract. In part she said: "Well, my daughter had been with her (grandmother) before she was twelve years old, and when she was going to get married —her husband had been in Detroit—they were going to Detroit to live and make their home, and it worried my mother so about giving Mary up. She prevailed on them to stay; in fact she cried. Well, she told my daughter that she wanted her to stay and help her with the work and that if she would stay and help her she would furnish everything and furnish the home for him and furnish everything they ate and would hire the washing and iron ing done if she would stay and help her and let her husband do the chores about the house, so they decided they would stay and help her and try it a year, and so they did."

The witness also stated, in substance, that they had heard the grandmother say on different occasions that she expected to pay Mary, or that she wanted to see Mary well paid for her services. The balance of the evidence largely goes to the question of the extent and value of the services and the physical disabilities of the grandmother and the attention she required.

On these facts the administrators insist that they were entitled to a directed verdict in their favor and that the court erred to their prejudice in overruling their motion to this end.

The evidence clearly proves an express contract and its terms are rather definite, but it did not include the services sued for in this action because they were not, as it would seem, extraordinary services or services outside of the contract proven by the appellee. In the first place, the evidence shows that the contract was only for a year and that no new or different contract was ever made between the parties. It is further shown that the grandmother continued in good health for about a year and a half after the making of the contract and that she required very little attention for that period of time, she being able to wait upon herself and do her own cooking. There is some slight evidence that the granddaughter told her grandmother on one or more occasions that she expected to be paid for her services and that the grandmother consented to this, but just what services is not made plain. The rule is well established in Kentucky that where persons related by blood or marriage reside together as one family for the mutual convenience of all, and one becomes sick or infirm and the other performs services for him, no recovery for such services can be had unless an express contract is alleged and proved, and in the establishment of such contract stricter proof is required than in an ordinary case. Bolling, et al. v. Bolling, 146 Ky. 313; Conway v. Conway, 130 Ky. 218; Armstrong's Admr. v. Shannon, 177 Ky. 547; Lucius v. Owens, 198 Ky. 117; Allen v. Smith, 208 Ky. 207.

One of the highest and most important obligations of a child is to respect and take care of his aged parent and to see that he is properly nourished, clothed and cared for; and the law recognizes this obligation. In doing so it presumes that when parent and child or grandmother and granddaughter reside together as a family, occupy the same house together, each contributing by services to helping the other, or one doing services and the other furnishing money and provisions, that the arrangement is one for the mutual benefit of those occupying the home and that neither is obliged to pay the other for services performed, but each receives his reward and compensation from the advantages of the arrangement, and until an express contract between the parties is alleged

and established by strong and convincing evidence, no recovery can be had.

Here the contract, as expressed by the witness for appellee, brought the grandmother and granddaughter and her husband into a single household, with an agreement that they should live together, helping and aiding one another, the grandmother to do some work and the granddaughter and husband to do certain other work, the provisions for the table to be furnished in part at least by the grandmother, and the house to be furnished by the grandmother and the coal and kindling and certain services to be furnished by the husband of the granddaughter. Each was dependent in part upon the other, and the arrangement seems a good one for all concerned. So far as the evidence shows the granddaughter had no home or property, and therefore she needed a home and furnishings for herself and husband. The grandmother needed the companionship and help of her granddaughter whom she had in large part reared. The mutuality of the arrangement is apparent throughout. What the contract was between the parties at the time of the death of the grandmother and for some months theretofore is not shown by the evidence, but it may be presumed that the contract made originally between the parties was continued throughout the four years. There is a complete absence of evidence to prove an express contract between the grandmother and granddaughter by which the former was to pay the latter for any services performed by her. We have frequently held that expressions from a grateful but feeble old relative to a younger member of the household to the effect that ''I expect to see you paid,'' or ''I expect to pay you,'' or ''when I die you will be paid,'' and other like expressions, are insufficient to establish a contract to pay for the services, and are nothing more than an expression of appreciation of the kindly services performed by the younger and strong to the old and infirm.

Under the facts proven in this case the court should have directed a verdict for the administrators when moved to do so by them, and its failure to do so was error necessitating a reversal of the judgment.

Judgment reversed.