## Engle v. Terrell et al.

Dec. 15, 1939.

Zeb A. Stewart and J. B. Campbell for appellant.

J. J. Tye and Victor A. Jordan for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

G. M. Engle died intestate on November 10, 1922, leaving surviving him as his heirs at law eight children and the children of a deceased daughter, Alice Terrell. He was also survived by his widow, Sarah F. Engle, who died on February 2, 1936. G. M. Engle owned a farm comprising approximately sixty-eight acres of land on which he resided at the time of his death. Dower was never allotted to the widow, and she continued to reside on the farm with her son, the appellant, Kager Engle, until her death. On May 18, 1936, Kager Terrell qualified as administrator of the estate of G. M. Engle, and on May 19, 1936, instituted this action against the heirs at law and creditors of G. M. Engle, alleging that the indebtedness of the estate amounted to between $450 and $500 and that it would be necessary to sell the real estate in order to pay the debts and distribute the estate among the heirs. To this petition the appellant filed a separate answer in which he alleged that his father for many years prior to his death was practically an invalid, and that "under a contract with the other children and heirs at law, he kept and looked after the needs of his father, and much of the time his father was not able to help himself, and it took quite a bit of time and expense in taking care of and looking after the said George M. Engle,

which was the nature of services known as menial services under the laws of this state, and that both under contract with his brothers and sisters, who are children and heirs at law of his father and mother, and under the law of menial services, this defendant waited on, took care of, and looked after the comforts of his father, George Engle, for about four years next before his death, and the said services for working, taking care of, and furnishing him food, clothing and shelter, and looking after, which took practically all of this defendant's time, was reasonably worth $20.00 per month or $240.00 per year, and for the full services for the full four years, would make a total sum of $960.00, no part of which has been paid.'' In the succeeding literary paragraph he alleged that his mother, Sarah F. Engle, for seven years prior to her death was also an invalid, and that he nursed, waited upon, and furnished her with necessary food, medicine, and medical attention during that period ''both under the laws of this state and under contract with his sisters and brothers to pay him a reasonable amount for said services rendered to his said mother.'' The services thus alleged to have been rendered his mother were valued by him at $300 per annum or a total of $2100. He next set forth various items of expense which he says that he incurred and paid for his mother and father, including taxes from 1922 to 1933 amounting to approximately $350 making a grand total of $4386, for which he prayed judgment and a lien ''against the estates of George M. Engle and Sarah F. Engle.'' In an amended answer the appellant alleged that his sister, Lucy Terrell, and his brother, Joe Engle, were not children or heirs at law of G. M. Engle because they were ''borned before the marriage of G. M. Engle and Sarah F. Engle'' and were not recognized by G. M. Engle as his children. He then proceeded to allege that shortly after his father's death he purchased for $70 Lucy Terrell's interest in the estate of his father, but that she had failed and refused to make him a deed. The prayer sub-joined to the amended answer was that Lucy Terrell and Joe Engle be ''disclaimed'' as children and heirs at law of G. M. Engle, and that the Commissioner of the Court be directed to convey to appellant the ''so-called'' interest of Lucy Terrell. Replies were filed by the administrator traversing the allegations of appellant's two answers and pleading the statute of limitation as to the claims for reimbursement asserted by him. It was also alleged in one of the replies that any

services or support rendered or furnished by appellant were voluntarily rendered and furnished, and that appellant was not entitled to contribution from his brothers and sisters. A rejoinder traversed this as well as other affirmative defenses set forth in the replies, and the action was referred to a special commissioner to take the testimony and report on the claims. It should be noted that the claims asserted by appellant were predicated upon an alleged contract between him and his brothers and sisters, and upon the duty of the brothers and sisters to contribute to the support of their aged parents, and that while the litigation was in fact between appellant and his brothers and sisters rather than between him and the administrator of G. M. Engle's estate, nevertheless, no process was issued against the brothers and sisters and the issues were joined by the administrator.

The Commissioner, after hearing a vast amount of testimony, reported adversely to appellant's claim, and the Court entered a judgment confirming the Commissioner's report and dismissed the petition. Said the Commissioner:

"Your commissioner finds that there is not sufficient proof to show a contract existed between this claimant and the other children or heirs of G. M. Engle, and Sarah F. Engle, and that there was no allegation in the petition or any notice given or demand made of the claimant, Kager Engle, nor does it appear that the other heirs were called upon, at any time to bear any portion of the expense, or that contribution from them would ever be expected or asked until the time, when Sarah F. Engle, fell and injured herself, and when notice was then given, the other children or heirs immediately responded, and in support of the above finding, your Commissioner quotes from the case of Wood v. Wheat, 226 Ky. 762, 11 S. W. (2d) 916  *  *  *"

The testimony showed the following facts:

The appellant, an unmarried man now fifty years of age, had resided on the farm with the parents during practically his entire life. The other children had married and moved away, although some of them continued to reside in the vicinity. After his father's death the appellant continued to reside with his mother and in conjunction with his brother-in-law, Sam Manning, and the

latter's sons, raised and sold crops on that portion of the farm which was cultivatable. The Mannings owned a residence on an adjoining small tract which had been conveyed to Mrs. Manning by her parents, G. M. and Sarah F. Engle. One of Sam Manning's sons and the latter's wife took up their abode in the residence occupied by appellant and his mother. The evidence indicates that what appellant was thus able to earn, combined with the industry of his mother, who, for several years at least following her husband's death, peddled produce, was sufficient to support him and his mother. In any event, he had a home and a living, while his brothers and sisters derived nothing from their inheritance. On the contrary, it is shown that several of them from time to time contributed coal and other supplies for their mother's support. Mrs. Engle was eighty-one years of age at the time of her death, and four months and eight days prior thereto had fallen and broken her hip. Following this injury, her daughter, Lucy Terrell, took up her residence in the home and nursed her mother. While there is some testimony that Mrs. Engle was in bad health for many years prior to this time and required constant attention from appellant, including the rendition of services of a most disagreeable nature, the preponderance of the testimony is to the contrary. Likewise, there is some testimony that G. M. Engle, who was also advanced in years, required attention from appellant for several years prior to his death, but here also the testimony negativing appellant's contention outweighs that supporting it. Appellant not only testified that he rendered onerous and menial services as alleged in his answer, but that he did so under the terms of an oral agreement with his brothers and sisters that he should have their shares of the estate for so doing. He also testified that he paid bills owing by his father and expenses incurred for his mother's benefit, including the taxes for the years referred to in his pleading. But he was unable to produce receipts for the expenditures which he claims to have made, and he is contradicted by his brothers and sisters, with the exception of Mrs. Manning. Without attempting to detail the testimony, which covers approximately four hundred and fifty pages, it is sufficient to say that it does not convince us that appellant's brothers and sisters agreed to pay him for taking care of their father or mother, or that he made the expenditures for which he claims reimbursement. The provisions of Section 606 of the Civil Code of Practice

prohibiting testimony by parties in interest of their transactions with decedents seem to have been ignored until a large part of the testimony had been given, and no exceptions to any part of the testimony were filed by any of the litigants. The fullest opportunity was afforded appellant to prove his case, and in the opinion of the Commissioner and the Chancellor, he failed to do so. As we have written many times, this Court will not disturb the findings of a court of equity on questions of fact where no more than a doubt as to their correctness exists. Moreover, it is doubtful whether in any event the appellant could have recovered in the present action. No contract with either of his parents was alleged, and, admittedly, Sarah F. Engle left no estate. The contract, if any existed, which induced appellant to render the alleged services, was with his brothers and sisters, and they, and not the estate of G. M. Engle, would have been liable for its breach. Furthermore, the estate of the father could not have been liable for the services rendered the mother many years after the father's death, and finally, any claims which appellant might have had against his father's estate for services rendered him personally, or for expenditures made in his behalf, were long since barred by limitation.

But appellant claims that irrespective of contract he is entitled to recover contribution from his brothers and sisters. Passing the objections to the procedure employed by appellant noted above, in his attempt to recover from his brothers and sisters in the present action, it is sufficient to say that it is neither alleged nor proven that the brothers and sisters were ever called upon to contribute to the support of their parents, or that they refused to do so. In the case of Wood et al. v. Wheat et al., 226 Ky. 762, 11 S. W. (2d) 916, 918, this Court held that at common law there was no legal obligation on the part of children to support their indigent parents, but that in this State the duty was imposed by Section 331f, Kentucky Statutes, saying in part:

> "The statute imposes upon the children coming within its purview the obligation to support parents that may be in the condition indicated by it, and this obligation may not be shifted to one of the children to the exclusion of those equally liable and equally able to perform it. It is a general rule of equity that a party who has discharged an obligation or duty resting upon several, and constituting a com-

mon burden or liability, may recover contribution from those to whose advantage the discharge of the obligation operated. 6 R. C. L. p. 1036; 13 C. J. pp. 821, 822, Sections 2, 3. But, in order that one child may impose upon the others the burden of contribution, notice should be given in order that all the children may have equal opportunity to provide the service and supply the needs of the indigent parent. If one child supports a dependent parent, that fact relieves all the children from liability to prosecution under the statute, but, when that child expects to hold the others liable to him for contribution, he should give them notice and afford them an equal opportunity to perform the duty for pay, or to make a contribution for the purpose. It may be that the other children acquiesced in the support that was being given in the belief that it was without desire or expectation of compensation. The policy of our law is illustrated by the rule to the effect that a child may not, in the absence of an express contract, recover from the estate of a parent for valuable services rendered in the support and care of the parent, even though it may have been no more than his brother's burden. Clark v. Hale, 209 Ky. 496, 273 S. W. 39; Gruelle's Adm'r v. Houchen, 216 Ky. 369, 287 S. W. 919. Compare Section 2178, Kentucky Statutes.''

In this connection it may be further remarked that the proof does not show that either of the parents was destitute. On the contrary, the father owned a farm which the proof shows is reasonably worth $1,500, in which the mother was entitled to dower and which she occupied during the entire period of her widowhood.

Appellant claims further that under the provisions of Section 4033, Kentucky Statutes, he is in any event entitled to recover from the owners the taxes which he has paid. He was one of the owners, and ordinarily would have a lien on the shares of his brothers and sisters for their proportions of the taxes. However, since he and his mother not only occupied the farm, but enjoyed the proceeds thereof during the entire period elapsing between his father's and mother's deaths, the Statute referred to is not applicable as it will be presumed that he was compensated by the use of the property for such taxes as he paid.

Judgment affirmed.