72 So.2d 710

**FUNDABURK et al.  v.  CODY et al.**

**4 Div. 643.**

Supreme Court of Alabama.

May 13, 1954.

Calvin Poole and Arthur E. Gamble, Jr., Greenville, for appellees.

Lightfoot & Bricken, Luverne, for appellants.

GOODWYN, Justice.

Bill in equity to sell land for division among tenants in common. The principal question relates to the right of those not in possession to require those in possession to account for rents, income and profits, and the right of those in possession to reimbursement out of the proceeds of the sale for sums expended by them in payment of insurance, repairs, and interest and principal on a mortgage debt against the property. The tenants in possession also seek compensation for personal services rendered by them in managing the property.

Essentially, the facts are these:

Emma T. Beard died intestate in 1934 leaving five children surviving her, viz.: Dell Fundaburk, Susie E. Cody, John M. Beard, Renoba Douglass, and Minnie Reynolds. At the time of her death she owned what is known as the Beard Hotel property in Luverne, Alabama, here involved. Since her death, Dell Fundaburk and Minnie Reynolds have been in sole possession of said property operating it as a public hotel. However, the other tenants have never been excluded from occupancy of said property. To the contrary, it clearly appears that they have acquiesced in the sole occupancy by said Dell Fundaburk and Minnie Reynolds. The receipts from the operation of said hotel, for room and board, totaled $83,675 and "expenses of groceries for board, laundry, three servants, coal and wood, telephone, and state and county licenses" amounted to $72,329.25. An additional expenditure of $3,956.58 was made for lights and water, making the total expenditures in the operation of the hotel $76,285.83. Said parties also claim that they paid out during their occupancy $1,211.08 for repairs, $926.13 for insurance, $686.40 for state, county and city ad valorem taxes, and $11,528.19 in principal and interest payments on a pre-existing mortgage to Home Owners Loan Corporation. They also claim $100 a month each for personal services rendered in the operation of the hotel, which they insist inured to the benefit of all the cotenants. The hotel consisted of thirteen rooms, two of which were occupied by the said Dell Fundaburk and Minnie Reynolds.

The bill was filed by appellees Frank J. Cody, Esther Cowart, Frances Thames and James Cody, the children and only heirs of Susie E. Cody, deceased. Renoba Douglass having conveyed her interest in the property to Dell Fundaburk and Minnie Reynolds, said last named parties and John M. Beard, being all of the tenants in common other than complainants, were made respondents to the bill. The complainants seek not only a sale for division but an accounting from Dell Fundaburk and Minnie Reynolds of the rents, income and profits received by them during their occupancy of the hotel property. Dell Fundaburk and Minnie Reynolds, by cross-bill, seek reimbursement, out of the proceeds of the sale, of the amounts expended by them in payment of taxes, insurance, repairs, and interest and principal on the mortgage, and also for their personal services.

The court ordered the property sold. At the sale, Dell Fundaburk and Minnie Reynolds became the purchasers for $15,000. No question is presented with respect to the sale. The sale was confirmed and the register ordered to hold a reference to ascertain the following: (1) reasonable solicitors' fees; (2) the rents and income received by Dell Fundaburk and Minnie Reynolds; (3) any outstanding liens against the property; (4) expenditures by Dell Fundaburk and Minnie Reynolds for the following purposes: (a) mortgage payments, (b) incidental expenses in operating the hotel, (c) repairs for preservation of the property, (d) state, county and city taxes, (e) fire insurance, and (f) what amount Dell Fundaburk and Minnie Reynolds should be paid for their personal services rendered for the common benefit of the estate.

The parties stipulated as follows:

That the mortgage payments to the Home Owners Loan Corporation totaled $3,965.54 on the principal and $4,760.80 for interest; that expenditures for repairs amounted to $1,211.08; that the total paid

for taxes and insurance was $3,945.56; and that the reasonable rental value of the property during the period of time in controversy was $13,885.

The register found and reported as follows: That the rents and income received by Dell Fundaburk and Minnie Reynolds totaled $83,675; that in operating the hotel business they expended $76,285.83; that they also expended the following amounts: $3,965.54 principal and $4,760.80 interest on the mortgage; repairs and preservation of the property, $1,211.08; and taxes and insurance, $3,945.56. The register also found that Dell Fundaburk and Minnie Reynolds should be paid $100 each, per month, for services rendered for the common benefit of the estate in operating the hotel.

Complainants filed exceptions to the register's report with respect to the finding of expenses in operating the hotel, on the ground that "the expense of operating a hotel business by the respondents is not a proper charge against the joint property." Exception was also taken to that part of the report finding that Dell Fundaburk and Minnie Reynolds should be paid $100 per month each for personal services rendered in operating the hotel.

The trial court, in effect, held as follows:

"1. That the expenses of operating the hotel were not proper charges against the joint property for which the other joint owners should be held accountable.

"2. That the operation of the hotel by Dell Fundaburk and Minnie Reynolds was for their own benefit and not for the common benefit of the joint owners of the property; that there was no agreement, express or implied, that said parties were to be paid for such services; and that said parties are not entitled to compensation from the proceeds of the sale of the property for such services.

"3. That since the reasonable value of the use and occupation of the jointly owned property, which was in the sole possession of the respondents, Dell Fundaburk and Minnie Reynolds, was in excess of all payments made by them for the protection and preservation of the property, the value of the use and occupation should be [and] the same is hereby set off against the amounts paid out by the respondents, Dell Fundaburk and Minnie Reynolds, for the protection and preservation of the property while the same was in the sole possession and used by them for operating a public hotel."

It is apparent that the "rents and profits" from the hotel operations came to $7,389.17, being the difference between receipts of $86,675.00 and expenses of $76,285.83; and that the expenditures by Dell Fundaburk and Minnie Reynolds for repairs, taxes, insurance and mortgage payments totaled $13,882.98. The position which they take is that they should be reimbursed out of the proceeds of the sale, before distribution, the sum of $6,493.81, which represents the balance of said $13,882.98 after crediting against it the "rents and profits" of $7,389.-17. We note that no insistence is here made that they are entitled to compensation for personal services.

On the other hand, appellees take the position that the trial court very properly set off the reasonable value of the use and occupation of the property ($13,885.00, as stipulated) against the payments for protection and preservation of the property ($13,882.98). Our problem, then, is to determine whether this was error.

This is not a case of one cotenant seeking a pro-rata part of "rents" collected by another cotenant from third parties, but involves instead the adjusting of equities between cotenants in a partition proceeding where some have been in sole possession of the property. It is provided by statute that, in partition proceedings, the court "shall proceed according to its own practices in equity cases", Code 1940, Tit. 47, § 186, and "may adjust the equities between and determine all claims of the several cotenants", Code 1940, Tit. 47, § 189. And, as we see it, that is what the trial court did in this case.

■ We have consistently approved the general principle that "a friendly occupancy of the common estate by one tenant does

not render him liable to account for rents and profits". Rehfuss v. McAndrew, 250 Ala. 55, 57, 33 So.2d 16; Warner v. Warner, 248 Ala. 556, 566, 28 So.2d 701; Burk v. Burk, 247 Ala. 91, 92, 22 So.2d 609; Turner v. Johnson, 246 Ala. 114, 115, 19 So.2d 397; Cochran v. Leonard, 204 Ala. 163, 164, 85 So. 693; McCaw v. Barker, 115 Ala. 543, 548, 22 So. 131; Gayle v. Johnston, 80 Ala. 395, 400; Wilkinson v. Stuart, 74 Ala. 198, 204, 205; Fielder v. Childs, 73 Ala. 567, 572, 573; Newbold **v.** Smart, 67 Ala. 326, 331, 332.

The principle is thus stated in Rehfuss v. McAndrew, supra [250 Ala. 55, 33 So.2d 17]:

"It is also well understood that **a** tenant in common in possession by virtue of his own title is not liable to his cotenants for use and occupation unless he actually excludes his cotenants from the premises. * * *

"The possession here referred to is of the entire premises. If such tenant in common occupies and uses the entire premises, without a contract to pay the other tenants and without an ouster, the entire income from such use belongs to the occupying tenant with no duty to account to the others. This includes crops thus grown."

In Warner v. Warner, supra, this court stated as follows [248 Ala. 556, 28 So.2d 710]:

"The only essential to a cotenancy or tenancy in common is a unity of possession or right of possession of the property and a cotenancy may exist in every species of property, real, personal and mixed, corporeal or incorporeal. 7 R.C.L. 815–817, paragraphs 8–10. Though a cotenant may occupy the entire property, no liability for rent or use and occupation exists in the absence of express agreement between the parties or such hostile occupancy of the whole as is tantamount to ouster of the cotenants. 7 R.C.L. pp. 828 et seq., paragraphs 22, 23 and 24; Turner v. Johnson, 246 Ala. 114, 19 So.2d 397."

In Burk v. Burk, supra [247 Ala. 91, 22 So.2d 609], it was stated as follows:

"It is, of course, a well-recognized principle that in the absence of any agreement to compensate his co-tenants, a co-tenant who has entered upon the common property without excluding the others or interfering with their rights is under no obligation to account to them for any profits that he may have made. 14 Am.Jur. p. 102; Turner v. Johnson [246] Ala. [114], 19 So.2d 397.

"It is equally well-settled, however, that such tenant in common may enter into an agreement by which he becomes a tenant of the others and is responsible for rent. Long v. Grant, 163 Ala. 507, 50 So. 914, 136 Am.St.Rep. 86."

From Turner v. Johnson, supra [246 Ala. 114, 19 So.2d 398], is the following:

"The rule of liability for an accounting for use or rent for occupancy of the joint property by a cotenant is that, in absence of an agreement to pay rent to the other cotenants, mere occupancy of the premises owned in common, by one of the tenants in common, does not result in a liability to the other cotenants to account or for use and occupation of the estate. Cochran v. Leonard, supra; Phillips v. Smith, 214 Ala. 382, 107 So. 841; Newbold v. Smart, 67 Ala. 326, 331."

We quote the following rule from Cochran v. Leonard, supra [204 Ala. 163, 85 So. 694]:

" * * * [I]n the absence of a withholding from the nonoccupying cotenant by the occupying cotenant of a net excess of a proper proportion of rent collected from a stranger tenant, there is no obligation upon an occupying cotenant to account to the cotenant who has voluntarily left the premises. Newbold v. Smart, 67 Ala. 326, 331, 332; Fielder v. Childs, 73 Ala. 567, 572, 573, among others."

In McCaw v. Barker, supra [115 Ala. 543, 22 So. 132], it is stated:

"The rule is well settled, that the friendly occupancy of the common estate by one tenant, does not render him liable to account for rents and profits. * * * But, where one tenant in common actually receives rents for the common property from those to whom he rents it, he may be compelled to account for such profits actually received. Freem.Co-ten. [& Partition] § 273; * * *".

From Gayle v. Johnston, supra, we quote the following:

"No recovery is sought for the mere use and occupation. Under our rulings such could not be had, unless the co-tenant complaining had been actually evicted, forcibly kept out of possession, or there had been an agreement to pay rent. Newbold v. Smart, 67 Ala. 326; Terrell v. Cunningham, 70 Ala. 100; Wilkinson v. Stuart, 74 Ala. 198; McMath v. De Bardelaben, 75 Ala. 68; Sargent v. Parsons, 12 Mass. 149. Such is the rule of the common law. In England the statute of 4 and 5 Anne was so interpreted as to give a right of recovery for mere use and occupation by one part owner against another; and similar statutes have been enacted in some of the States, with a like interpretation. We have no such statute; and the statute of Anne being enacted after the settlement of this country, we are left under the common law rule, which denies such recovery."

The rule, as stated, was first announced in Wilkinson v. Stuart, supra, as follows:

" * * * The rule is well settled, that a friendly occupancy of the common estate by one tenant does not render him liable to account for rents and profits. Newbold v. Smart, 67 Ala. 326; Terrell v. Cunningham, 70 Ala. 100; Lockard v. Lockard, 16 Ala. [423] 433."

The following discussion and statement of the rule is from Newbold v. Smart, supra:

"Tenants in common are seized *per my et per tout*. Each has an equal right to occupy; and unless the one in actual possession denies to the other the right to enter, or agrees to pay rent, nothing can be claimed for such occupation. Such possession by one is treated as had, with the consent and approbation of the co-tenant. 'A mere participation in the profits of land, with a joint occupation, or an occupation which does not exclude the owner from possession, will not amount to a tenancy.' Taylor's Landlord and Ten. § 24. In Badger v. Holmes, 6 Gray 118, [72 Mass. 118] the court said: 'Nothing is better settled than the rule, that the mere occupation of premises owned in common, by one of the tenants in common, does not entitle his co-tenant to call him to account, or render him in any way liable to an action for the use and occupation of the estate. Each owns the estate *per my et per tout*. If a co-tenant does not see fit to come in and occupy, the other still has the right to the enjoyment of the estate; and in such case, the sole occupation of one, is not an exclusion of the other. Each tenant, being seized of each and every part and parcel of the estate, has a right to the use and enjoyment of it; and so long as he does not hold his co-tenant out, or in any way deprive him of the occupation of the estate, he exercises only a legal right, and receives nothing for which he is bound to account to his co-tenant.' * * * In 1 Washb. on Real Prop. 570, [420], is this language:

'To render one co-tenant liable to another for rent, or for use and occupation, there must be something more than an occupancy of the estate by one, and a forbearance to occupy by the other. The tenant who merely occupies the estate does no more than he has a right to do on his own account.' "

There is no dispute about the occupancy of Dell Fundaburk and Minnie Reynolds coming within the stated rule. Being so, it might be observed that there would be no difficulty in finding them not liable for "rents and profits" if that question, as presented by the original bill, had remained the one issue for equitable adjustment between the cotenants. However, said tenants in possession seek reimbursement, out of the proceeds of sale, of expenditures which they claim they have made for the benefit of the common property. When such is the situation, there is presented the task of adjusting the equities between the several cotenants. As stated in Freeman on Cotenancy and Partition, Sec. 505, p. 674:

"When a suit for partition is in a court of equity, * * * it may be employed to adjust all the equities existing between the parties and arising out of their relation to the property to be divided. 'He who seeks equity must do equity.' Hence whoever, by a suit for partition, invokes the jurisdiction of a court of equity in his behalf, thereby submits himself to the same jurisdiction, and concedes its authority to compel him to deal equitably with his cotenants."

In Henderson v. Stinson, 207 Ala. 365, 367, 92 So. 453, 454, it is said:

"Having acquired jurisdiction for partition, the court will proceed to a settlement of all related matters."

The Texas Supreme Court, in Roberts v. Roberts, 136 Tex. 255, 150 S.W.2d 236, 238, 136 A.L.R. 1019, discusses the principle as follows:

"* * * [W]hile at common law, * * * a tenant in common who occupies joint property without complaint from his cotenants is not required to account for the value of the use thereof, yet when he resorts to equity and seeks contribution from his cotenants for funds expended in the betterment of the common estate, it would seem that he should be required to do equity and allow as an offset the value of the use of the premises. 62 C.J. 478; Clute v. Clute, 197 N.Y. 439, 90 N.E. 988, 37 L.R.A.,N.S., 146, 134 Am.St.Rep. 891; Ward v. Pipkin, 181 Ark. 736, 27 S.W.2d 523; Patterson v. Miller, 154 Ark. 124, 241 S.W. 875; Engle v. Terrell, 281 Ky. 88, 134 S.W.2d 980; Mastbaum v. Mastbaum, 126 N.J.Eq. 366, 9 A.2d 51. Thompson on Real Property says: 'A tenant who has paid taxes upon the common land, or removed other incumbrances, may have allowance made therefor. If, however, such tenant has had the possession and use of the entire land during the years he has paid the taxes, the court should, in adjusting the equities, take into account the value of such possession, though a co-tenant cannot recover rent until demand and refusal of joint occupancy.'"

In the Indiana case of Porter v. Mooney, 64 Ind.App. 479, 116 N.E. 60, 63, it is said:

"* * * [It is a general rule, in the application of which, by reason of certain equitable considerations that may arise, exceptions are recognized, that a cotenant may be required to account only in case he has received rents from third persons or has held possession in hostility to his cotenants and to their exclusion. Carver v. Fennimore, 116 Ind. 236, 19 N.E. 103; Overturf v. Martin, 170 Ind. 308, 84 N.E. 531. Where, however, in a proceeding such as this, the cotenants ask an equitable accounting against the occupying tenant, by reason of rents and profits received by him, such occupying tenant in such accounting is entitled to an allowance based on incumbrances paid and discharged by him and advances made for proper and reasonable repairs and improvements. A right to an accounting in such a case is equitable in its nature, and is governed by equitable principles. 38 Cyc. 59; * * *. In such accounting, each case must be determined from a consideration of its own characterizing

**32**

facts. Curtis v. Poland, 66 Tex. 511, 2 S.W. 39."

Would it be just and equitable, in a partition proceeding, for a tenant in sole possession to have the benefit of the use and occupation and the "rents and profits" incident to such use and occupation, without accounting therefor, and still be permitted to have contribution from the other cotenants for expenditures made in maintaining and protecting the common property? That is the question presented here.

In Gordon v. McLemore, 237 Ala. 270, 274, 186 So. 470, 474, we stated as follows:

" * * * [W]hen a cotenant is in possession using the property on his own account, and under such circumstances that he is not chargeable with any amount for such use and occupation, and pays the taxes during that period, whether he can hold his cotenants to account for their pro rata share of such expenditure is a question which we do not find has been before this Court, and on which there is a conflict of authority elsewhere. See 48 A.L.R. 593; 14 Am.Jur. 114, sec. 47, notes 4 and 5; 7 R.C.L. 824, sec. 19, note 2; 62 Corpus Juris 484, sec. 124, note 80; [Willmon v. Koyer, 168 Cal. 369, 143 P. 694], L.R.A.1915B, 971, 972.

"But we think the rule stated in 7 R.C.L. 824 is equitable and reasonable, and is approved by us, as follows: 'A cotenant in sole possession and receiving all the profits derived from the property (not now including rents received from tenants, nor applying when he is accountable for the rental value, we interpolate) is deemed to have undertaken the discharge of certain duties to his cotenants, such as preserving the property by making needful ordinary repairs * * * and payment of taxes and other annually maturing liens,' and is not entitled to contribution from them."

■ The interpolation there made by this court is of significance here and has reference to the rule that " 'where one ten-ant in common actually receives rents for the common property from those to whom he rents it, he may be compelled to account for such profits actually received.' " Rehfuss v. McAndrew, 250 Ala. 55, 33 So.2d 16, supra. To the same effect is Faust v. Faust, 251 Ala. 35, 37, 36 So.2d 232, 233, from which the following is quoted:

" ' * * * It has become a settled rule in this country that a cotenant who has received money from third persons for the use of the common property becomes a trustee for the amount collected for the benefit of his cotenants, * * *.' 14 Am.Jur. pp. 99, 100. For money so received, he must account. Henderson v. Stinson, 207 Ala. 365, 92 So. 453; 27 A.L.R. page 188."

■ The interpolation also has reference to the principle that a cotenant in possession may be accountable for the rental value when there is an agreement to that end or there has been an ouster of the other cotenant. Henderson v. Stinson, 207 Ala. 365, 366, 92 So. 453, supra; Gayle v. Johnston, 80 Ala. 395, 400, supra; Newbold v. Smart, 67 Ala. 326, 331, supra. In the last cited case it is said that "unless the one in actual possession denies to the other the right to enter, or agrees to pay rent, nothing can be claimed for such occupation". But this principle has no application here since there was neither an agreement to pay rent nor an ouster.

If there were any "rents" collected by the tenants in possession from third parties, it was in the form of pay for use of rooms in the hotel. The usual rate was $1.50 per day; but can this be said to be "rents" collected by the tenants in possession within the rule requiring them to account therefor? As we view it, under the evidence in this case, such pay was simply an element in determining what, if any, "profits" were received by the tenants in possession in connection with their operation of a hotel business on the property. The tenants in possession introduced in evidence an account showing the annual receipts and expenses in operating the hotel. There is no separation of "rents", as such, from re-

ceipts for board. The account merely shows lump sums received annually for "rooms and board". So, even if it could be said that the pay for "rooms" should be accounted for as "rents", there is no way of ascertaining, from the evidence, the amount thereof.

The one question which has given us most concern is the right of the tenants in possession to contribution from the other cotenants for payments on the principal of the mortgage. In Troy v. Protestant Episcopal Church, 174 Ala. 380, 387, 56 So. 982, 983, it is stated as follows:

"The right to contribution does not depend upon contract. 'It is a principle of equity having its foundation in natural justice; that, when one discharges more than his just portion of a common burden, another who has received the benefit ought to refund to him a ratable proportion.' Carter v. Fidelity Co., 134 Ala. 369, 32 So. 632, 92 Am.St.Rep. 41; Owen v. McGehee, 61 Ala. 440. 'Where one of several tenants in common or joint tenants of land removes a burden resting upon the joint estate, he is entitled to just contribution from the others, so that the burden may be equal. This rule applies alike to the payment of a mortgage, a purchase-money lien, taxes assessed upon the land, ground rent or the removal of a superior title.' 7 Am. & Eng.Encyc.Law, 353, 354. The general rule in equity is that all the estate concerned, whether defined by quantity of interest and duration, or by extent of territory, shall contribute to the incumbrance according to their relative value when the debt falls due."

In Salter v. Odum, 240 Ala. 462, 465, 199 So. 687, 689, the right of a cotenant who pays off a mortgage on the common property is thus declared:

"It is also well established by our decisions that where one cotenant, who is not the debtor, and, therefore, not primarily and absolutely liable for the mortgage debt, pays off a mortgage on the joint or common property, such cotenant so paying off the mortgage becomes an equitable assignee of the mortgage, or title so acquired, and may keep alive and enforce the lien so far as may be necessary for his own benefit. The doctrine of contribution among all those who are interested in having the mortgage redeemed, or the outstanding title acquired, in order to refund the redemptor the excess of his payment over and above his own proportionate share, and the doctrine of equitable assignment in order to secure such contribution, are the means by which equity works out justice, and equality of burden, under such circumstances. As otherwise said, the redeeming cotenant is considered the assignee of the mortgage, and stands in the place of the mortgagee in relation to the other owners of the equity. * * *"

However, it is clear that those cases do not have reference to the right to contribution of a cotenant in *sole possession*. We have already quoted from the case of Gordon v. McLemore, 237 Ala. 270, 274, 186 So. 470, supra, wherein approval was given to the rule stated in 7 R.C.L. 824. In that case the question involved was the right to contribution for permanent improvements made and taxes paid. It was there noted that the question of contribution to a cotenant in possession for taxes paid by him had not theretofore been before this court. Nor do we find that there has been before this court the question of the right of a cotenant in possession to contribution for interest and principal payments made by him on a mortgage against the property. Insofar as mortgage interest is concerned, we are content to follow the same rule from 7 R.C.L. 824, approved in Gordon v. McLemore, supra, in holding that such interest payments, like taxes, are not reimbursable. Included in the rule, as stated in 7 R.C.L. 824, but omitted from the quotation approved in Gordon v. McLemore, supra, is the "payment of interest on a subsisting mortgage". It is to be noted that no mention is made in the rule with

respect to payments in reduction of the principal amount due on the mortgage. Thus, we must decide whether, under the facts here present, the tenants in possession are entitled to reimbursement, out of the proceeds of the sale, of payments made by them on the mortgage principal. The answer to this, we think, may properly be resolved in adjusting the equities between the cotenants. The trial court found that the rental value for the use and occupation by the tenants in possession was a complete offset for all of the items of expenditure made by them, including the payments on the mortgage principal. We see no basis for a reversal of such finding. We have no way of knowing how the parties arrived at the value of the use and occupation as stipulated and cannot say that setting off such value against the expenditures was not a fair and equitable adjustment of the claims between the several cotenants.

From what we have said it follows that the decree of the trial court is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.