ROBERT P. BRADLEY, Retired Appellate Judge.
This case arose when Mrs. Gloria Bruis-ter filed a complaint against Dr. R. Douglas Land, alleging that he had filed an unlawful lien against her interest in a parcel of land that she co-owned with him. Mrs. Bruister further alleged that Dr. Land *1069 had wrongfully deprived her of rental income from the property.
Dr. Land answered the complaint and filed a counterclaim for $10,000, alleging that Mrs. Bruister owed him this sum as her contribution for expenses arising from the upkeep of the property.
After an ore tenus proceeding, the trial court entered an order awarding $2,659.27 in escrow to Mrs. Bruister, as well as a portion of rent due from the property. Dr. Land’s counterclaim was denied. Dr. Land subsequently appealed from this judgment and Mrs. Bruister filed a cross-appeal.
Dr. Land argues that the court misapplied the law in reaching its judgment and that the judgment is against the weight of the evidence presented at trial.
The record reveals the following facts: Prior to 1984, Dr. Land and Mrs. Bruister’s husband, Hubert, were business partners who jointly owned several pieces of real estate. The partners developed a parcel of this real estate and later rented it to an IGA grocery store. The partners rented another parcel of land to Alabama Federal Bank. The partners received a two-party rent check from these properties each month.
The partners were responsible for the upkeep of the IGA property and shared the expenses of maintaining and improving it. The record indicates that Dr. Land paid for major expenses, such as installing a sprinkler system, and Mr. Bruister then reimbursed him in installments. To pay for his share of the IGA expenses, Mr. Bruister endorsed the rent check the partners received from Alabama Federal and gave it back to Dr. Land.
In June 1984 Mr. Bruister conveyed his undivided one-half interest in the IGA and Alabama Federal properties to his wife. At that time, Mr. Bruister owed approximately $1,496.86 to Dr. Land for various expenses. Dr. Land was not given notice of this conveyance.
Each month thereafter, Mr. Bruister continued to receive two-party rent cheeks from Alabama Federal, which he still endorsed and gave to Dr. Land to reimburse him for expenses incurred on their shared properties prior to 1984.
In April 1987 Dr. Land learned for the first time of the conveyance of property to Mrs. Bruister. Thereafter, Dr. Land contacted Mrs. Bruister and asked her to reimburse him for one-half of the expenses incurred on the upkeep of the IGA property since the 1984 conveyance to her. She refused to pay this alleged debt.
In October 1987 Dr. Land learned that Mrs. Bruister intended to sell her interest in the IGA property. He then filed a $2,438.80 lien against the property and notified Mrs. Bruister’s realtor of this action. The realtor subsequently purchased Mrs. Bruister’s interest in the property, after paying off the existing mortgage upon it. The realtor then deposited $2,438.80 in an escrow account until the trial court could settle the parties’ respective claims.
In his answer to Mrs. Bruister’s complaint in this case, Dr. Land stated that he filed the lien against the IGA property in order to collect for one-half of the expenses incurred in maintaining the property after 1984. The complaint alleged that the lien was lawful for this purpose; however, it also contained a counterclaim of $10,000 for these same alleged expenses. In its order, the trial court found that Mrs. Bruis-ter had a duty to pay her one-half of the expenses accruing after 1984, although she could not be subject to a lien for this amount. However, the trial court denied Dr. Land’s counterclaim for the expenses. Dr. Land concludes that this seeming inconsistency was reversible error.
We begin our analysis by recognizing that conveyance by one joint tenant to a third party destroys the joint tenancy and that a tenancy-in-common among the new owners is created by operation of law. Durant v. Hamrick, 409 So.2d 731 (Ala.1981). Accordingly, Mrs. Bruister became a tenant-in-common with Dr. Land in the IGA and Alabama Federal properties after the 1984 conveyance to her.
The Alabama Supreme Court has held that where a tenant in common who is not in sole possession of the property removes *1070 a burden upon the property, or pays taxes assessed upon it, he is entitled to just contribution from the other tenants so that the burden may be equal, Fundaburk v. Cody, 261 Ala. 25, 72 So.2d 710 (1954); Gordon v. McLemore, 237 Ala. 270, 186 So. 470 (1939), but must account for the rents he has obtained from third persons for the use of the common property. Dawson v. Thorpe, 47 Ala.App. 215, 252 So.2d 331 (Ala.Civ.App.1971). Faust v. Faust, 251 Ala. 35, 36 So.2d 232 (1948). This is so because the cotenant who collects rents from the third-party renters becomes a trustee for the amount collected for the benefit of the cotenants. Dawson.
Dr. Land conceded at trial that he had received all the rent proceeds from the Alabama Federal property after 1984, because Mr. Bruister continued to endorse the two-party checks and give them to him. Dr. Land stated that he applied these checks to Mr. Bruister’s preexisting debt and did not apply them to the expenses that accrued after the conveyance of the property to Mrs. Bruister.
As best we can discern, Dr. Land argues in his brief that Mrs. Bruister had an obligation to pay off the debts that were incurred by her husband before the property was conveyed to her. The record is unclear as to the exact nature of these debts, but at least some of them were incurred in the development and improvement of the rental properties. The record is clear that Mrs. Bruister was never involved in any agreement between Dr. Land and her husband regarding the payment of these debts.
The Constitution of Alabama specifically precludes the automatic attachment of a wife’s separate property for the debts of her husband. It provides as follows:
“The real and personal property of any female in this state, acquired before marriage, and all property, real and personal, to which she may afterwards be entitled by gift, grant, inheritance or devise, shall be and remain the separate estate and property of such female, and shall not be liable for any debts obligations, or engagements of her husband....”
Article X, § 209, Constitution of Alabama (1901).
A wife may pay her husband’s debts, she may give her property to him, and she may borrow money to apply to his debts. However, under this provision of the constitution, the separate property of the wife may not be appropriated without her consent to discharge a debt incurred by a loan that is made only to her husband. Continental Life Ins. Co. v. Brandt, 228 Ala. 570, 154 So. 903 (1934); Corinth Bank & Trust Co. v. Pride, 201 Ala. 683, 79 So. 255 (1918). No form, device, or any kind of concealment is permitted to stand in the way of the wife’s release from liability for the debts disclosed to be those of her husband. Webb v. Lamar, 235 Ala. 533, 180 So. 545 (1938). Where credit is extended solely to the husband, he alone is bound. Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45 (1918).
In Fries, a husband entered into a contract with a merchant whereby he obtained building materials on credit, in order to erect certain improvements upon property that was owned by his wife. Although the materials were for the wife’s ultimate benefit, the court found that she could not be held liable for the payment of them unless there was a binding agreement between the merchant and her. The court held that, in the absence of such an agreement, no lien would attach to the wife’s property for the payment of the husband’s debt.
In view of the above, Mrs. Bruister had no liability for the payment of her husband’s debts to Dr. Land, even if these debts were incurred in the improvement of the land that was ultimately conveyed to her. Consequently, Dr. Land had no basis in law for withholding Mrs. Bruister’s share of rent for the satisfaction of her husband’s debt. Rather, the rent checks could be withheld only to offset Mrs. Bruis-ter’s own expenses as a cotenant, not the expenses that accrued prior to the time that the property was conveyed to her.
In his counterclaim, Dr. Land sought $2,591.80 in expenses which he claimed accrued after 1984. However, the *1071 record shows that $1,871.86 of this amount was owed to Dr. Land by Hubert Bruister prior to 1984. Moreover, Dr. Land began to charge interest on this prior debt after the conveyance of property to Mrs. Bruis-ter.
A careful review of the record reveals that the expense incurred in maintaining the property after 1984 amounts to about $1,341. From 1984 until the property was sold in 1987, Dr. Land withheld about $950 in rent from Mrs. Bruister, as well as $772 in income tax refunds. It appears that Dr.' Land withheld over $300 more in rent from Mrs. Bruister than was necessary to cover her share of the expenses accruing after 1984. Dr. Land attached a lien upon Mrs. Bruister’s interest in the land to collect for expenses she did not owe.
In its order, the trial court decided that the lien was unlawful and awarded to the wife the amount being held in escrow. The trial court further determined that Dr. Land owed Mrs. Bruister $210.34 “for income received by defendant from the jointly-owned real property, after allowing all duly authorized deductions.”
The record is not clear as to the exact amount of excess rent that was improperly kept by Dr. Land; however, there is evidence to show that it was as much as $300. Accordingly, we find that the trial court’s judgment was amply supported by the facts. ' It is therefore affirmed.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.